Filed March 10, 1893.

———————

No. 16,655.

## THE EVANSVILLE AND RICHMOND RAILROAD COMPANY
### *v.* BARNES.

RAILROAD.—*Personal Injury of Employe.—Assumed Risk.—Recovery.*—
Where a railroad employe, superintendent of bridges and assistant superintendent of construction, brings suit for damages for injuries sustained by the derailment of a construction train on which he was riding at the time of the injury complained of, the track being half tied and not ballasted, of which facts plaintiff had knowledge, and had just preceding the accident inspected the bridge and approaches, upon which the accident occurred, the plaintiff sustains the position of complaining of the defective condition of the railroad which he was employed to assist in making perfect, and he can not recover, the risk being an assumed one; and it is immaterial in what capacity the plaintiff was acting when he inspected the bridge and approaches.

The Evansville and Richmond Railroad Company *v.* Barnes.

SAME.—*Common Carrier of Passengers.—Construction Train.—Principal and Agent.*—A superintendent of construction and civil engineer of a railroad has not the power, as such, to convert a construction train into a passenger train, and could not open an incomplete road into one for passenger traffic without the consent of his superior officers.

PLEADING.—*Complaint.—Theory.—Recovery.*—A plaintiff is bound by the theory of his complaint, and can recover on no other.

From the Monroe Circuit Court.

*M. F. Dunn,* for appellant.

*C. C. Matson, J. Giles, J. R. East* and *W. C. East,* for appellee.

DAILEY, J.—The matter in controversy has been substantially passed upon by this court in the case of this appellant against Tyre S. Henderson, decided on April 4th, 1893.

The Henderson suit grew out of the same wreck, and the facts upon which the court reversed the judgment of the court below are almost identical with those shown in this case. That is, we have the same conductor, the same engineer, the same cross-ties and derailment. Instead of an inexperienced minor, we have an experienced railroad man and an adult. In lieu of a mere employe, ignorant of the road and but a short time in its employ, as in the former case, we have, in the person of the plaintiff, the superintendent of bridges and an assistant superintendent of construction, who had been with the road during the entire progress of its construction, frequently over it, and thoroughly familiar with its condition—one who inspected the track, including the portion complained of, immediately before the accident, and who made no protest, but permitted the train to be run at a rapid rate of speed when it was within his power, owing to his position, to have prevented it.

We have before us a plaintiff, superior in authority to

all the construction trainmen, who, from his experience, by a mere casual observation, had he looked, could have seen that the ties were not properly loaded, and who made no objection to the manner of loading, and assumed the risk.

The appellee's own testimony condemns his right to a recovery. As a witness, he says, in substance: "I knew it was a new road in process of construction, only half tied. I knew the condition of the track east of the starting point." * * * "I knew it was a new road, and the manner of constructing roads, that it was half tied. I knew the manner of loading cross-ties at the point of the accident."

Q. "Did you make an inspection of the road-bed and cross-ties at the point of the accident?" A. "Yes; that became a part of the bridge; I stated that." "I inspected the entire track. When you inspect the entire track, you do inspect it all." * * * "We carefully inspected to see that it was all alike at that particular point, and safe to run over." * * * "We made a careful inspection of bridges and approaches at the point of the accident. I was over the road twice that morning." * * * "The half tieing system is the ordinary method of constructing a new railroad." * * * "I did not notice how the cross-ties were loaded; I never looked."

Felix Polk, who was engaged with the appellant that day, says: "We inspected the bridges and the track that morning."

From the testimony of the appellee as to the condition of the track observed by him and Felix Polk, immediately before the accident, it is evident he knew it was a new track, half tied, and not ballasted.

In another part of his statement, he says: "It was half tied. It was so all along the line." * * *

"Track was quite rough; there was water on it at the time. It was sunk down in the mud."

The witness also says he did not·look to see whether the ties were braced or not, and that he could have told at a glance.

"It is an elementary principle of law governing the relation of master and servant, that when a servant enters upon an employment which is, from its nature, necessarily hazardous, the servant assumes the usual risks and perils of the service, and this is especially true as to all those risks which require only the exercise of ordinary observation to make them apparent. In such cases there is an implied contract on the part of the servant to take all the risks fairly incident to the service, and to waive all right of action against the master for injuries resulting from such hazards. This waiver includes on the part of the servant all such risks as from the nature of the business as usually and ordinarily conducted, he must have known when he embarked in the master's service, and also those risks which the exercise of his opportunity for inspection, while giving diligent attention to such service, would have disclosed to him." *Evansville, etc., R. R. Co.* v. *Henderson*, 134 Ind. 636.

Where the danger is equally open to the observation of both the master ·and the servant, they are upon an equality, and the master is not liable, as a general rule, for the resulting injuries. *Evansville, etc., R. R. Co.* v. *Henderson, supra; Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 326 (328).

The accident, to some extent, must be attributed to the speed with which the train was run. This is the appellee's contention, also; but the necessity of the speed at which the train was propelled at the time of the injury, is not apparent from the evidence adduced on the trial.

On the contrary, it is shown that the engineer had orders to run slowly, which he violated.

In the case of *Evansville, etc., R. R. Co.* v. *Henderson, supra,* on p. 641, the court said: "It is difficult to avoid the conclusion that the appellee's injuries are attributable, in some degree at least, to the unnecessary and reckless rate of speed at which the engineer was running the construction train over a half-finished road. Had the train been run at a speed consistent with the dangers incident to the known conditions surrounding the parties in charge of, and upon, the train, there is no reason to believe that the accident would have occurred, in which the appellee was so seriously injured. But the appellee and the engineer operating the engine were fellow-servants, and for this reason the appellant is not liable to the appellee for an injury received on account of the negligence of such engineer."

In *Columbus, etc., R. W. Co.* v. *Arnold, Admr.,* 31 Ind. 183, it is said: "It is now settled in this State, that the employer is not liable for an injury to one employe, occasioned by the negligence of another engaged in the same general undertaking. * * 'Neither is it necessary, in order to bring the case within the general rule of examination, that the servants, the one that suffers and the one that causes the injury, should be at the time engaged in the same operation or particular work. It is enough that they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties and services tending to accomplish the same general purposes, as in maintaining and operating a railroad, operating a factory, working a mine, or erecting a building. The question is whether they are under the same general control.' "

From the evidence it appears that Tindall, the conductor, Spellman, the engineer, and the appellee, Barnes,

were under a common master, and it is neither charged in the complaint nor shown in the evidence that either Tindall, who managed the train, or Spellman, the engineer who ran it, was incompetent. There were no latent or hidden dangers disclosed by the evidence, and the appellee stands in the position of complaining of the defective condition of the railroad which he was employed to assist in making perfect.

As stated in *Evansville, etc., R. R. Co.* v. *Henderson, supra,* the companion case of this, "had the road been completed the necessity for his employment would not have existed." It seems clear that if the road was as appellee charges it to have been in his complaint, then it was in that condition when he inspected it, and he was negligent in not giving warning and in boarding the train. If it was not in the condition in which he charges it to have been, and that condition tended to bring about the accident, then he can not recover, because he must prevail, if at all, under the negligent acts he has chosen to rest his case upon.

It is immaterial in what capacity the appellee was acting at the time he inspected the bridge and the approaches upon which the accident occurred, whether at the time of such inspection the appellee was acting as arbitrator in the employ of the company, and under his regular salary, or was acting as a superintendent of bridges, as charged in the complaint, or as an assistant superintendent of construction. If he inspected the road where the accident occurred, and before it happened, and discovered its condition to be bad, he should have reported the fact. If he discovered nothing, because he was negligent in his duty, then he can not recover. If he discovered nothing, as an inspector, with the assistance of the engineer, because nothing was discoverable, then, in that event, the appellant discharged his whole

duty to the appellee and his co-employes. Negligence must be unmixed to entitle the appellee to the relief he seeks.

In *Louisville, etc., R. W. Co.* v. *Sandford, Admx.,* 117 Ind. 265 (266), in speaking of the general rule governing the relations existing between employer and his employes, it is said that a railroad company is required to construct and maintain its bridges, etc., in a reasonably safe condition. "The employes enter its service under an implied contract that this duty will be performed, and, under this contract, they impliedly assume all the ordinary perils of the service. Employes assume all the ordinary risks incident to the employment, but they assume no extraordinary risks caused by the employer's breach of duty, unless they have knowledge of the unusual danger caused by the breach, and voluntarily continue in the company's employment. If, with this knowledge, they do continue, then the increased danger becomes an incident of the service which they assume, and for liability from which the master is exonerated." The theory of appellee that he was a mere arbitrator sent from the place of his employment as a bridge superintendent to discharge a duty beyond the line of his employment, is foreign to the complaint, and not within the issues. He sues as a superintendent of bridges, and by that theory he is bound.

It is contended by the appellee, in his brief, that he was a passenger on the construction train, and as such entitled to all the rights that a passenger holding a ticket or being transported under agreement could claim against the appellant as a common carrier. As stated, he sues as a superintendent of bridges, not as a passenger, and the theory that he was a passenger is not within the complaint. He was not being carried for hire, but was riding over a road which the evidence discloses, and

which he knew had not yet been opened for passenger traffic. The complaint itself negatives any such idea, but it says: "That on said 2d day of October, 1889, the plaintiff was invited and requested by the said defendant to take passage on said train." There is no proof of any such order, invitation or request on that day. The sole evidence as to instruction and invitation is "Allen told me he wanted me to go over there as arbitrator. I told him to let me know; I would go when Polk got ready." "That was previous to the wreck a couple of weeks." "Slayback told me the same thing."

Plaintiff went to Indian Springs pursuant to a conversation with Allen, chief engineer, two weeks prior to October 2d, 1889. The plaintiff further says with reference to his going upon the train: "When I got there Tindall told me he was ready to start. I told him I wanted to ride with him."

It thus seems that appellee asked permission of Tindall to ride, and that Tindall did not invite him to do so. Allen was a superintendent of construction and civil engineer, and it is not shown that he had authority to receive the appellee as a passenger upon a road that had never been opened to the traveling public. The board of directors and the established rules of the company alone could make the appellant a common carrier for hire and the appellee a passenger. The power was not delegated to Allen, and it was beyond the scope of his authority to convert a construction train into a passenger train. He could not open an imperfect and incomplete road into one for passenger traffic without the consent of his superior officers. By what authority a chief engineer and superintendent of construction can make a contract, or give an order for the transportation of passengers is not shown by the record.

In *Smith* v. *Louisville, etc., R. R. Co.*, 124 Ind. 394, p.

397, it is said that "going aboard the train by the invitation and permission of the conductor did not itself constitute the appellant a passenger. * * * A person asserting that he was a passenger * * is bound to prove it." We do not see how the appellee can claim that he was a passenger, when in his complaint he fails to aver that he was such. In the case last cited the court say: "But it is not alleged that he was a passenger on the train; the allegation is that he was thus there on the invitation and with the permission of the conductor of the train. It does not appear that the rules and regulations of the appellee, or its practice independent thereof, extended to the public the privilege of traveling upon freight trains; nor is it alleged that the appellant did not know when he went upon the train that it did not carry passengers."

Numerous objections have been urged by the appellant to the sufficiency of the complaint in this suit, which it is not necessary to consider. We have examined it with some degree of care, and in our opinion it states a cause of action, but we think, for the reasons stated, that it is not sustained by the evidence.

The judgment is reversed, with instructions to proceed in accordance with this opinion.

Filed Mar. 28, 1894.