## Indianapolis & Greenfield Rapid Transit Company v. Andis.

[No. 4,736. Filed October 11, 1904.]

Appeal and Error.—*Record.*—*Certificate.*—*Change of Venue.*—The clerk of the court to which a cause had been taken on change of venue certified on appeal that the record contained a full and true transcript "of all papers filed therein, including all pleadings." It did not affirmatively appear that the original papers were filed in the court to which the cause was sent, nor that they were not so filed. *Held*, that the certificate sufficiently shows that the record contains a copy of all the pleadings in the cause. *pp. 627, 628.*

Same.—*Record.*—*Change of Venue.*—*Pleadings.*—Where, after a change of venue was taken, there was an appearance by both parties in the court where the cause was sent, and the court overruled demurrers to the complaint, and the cause proceeded to trial and final judgment without any objection that the original pleadings were not on file in that court, the Appellate Court is authorized in treating the copy of the pleadings set out in the copy of the transcript made in the change of venue as a sufficiently certified copy of the original pleadings. *p. 628.*

Judgment.—*Nunc Pro Tunc Entry.*—*Evidence.*—*Memorandum.*—A written memorandum of the court's action stating, "Demr. to complaint overruled; answer filed," was sufficient to admit parol proof showing the actual ruling of the court upon the separate demurrers to the different paragraphs of complaint and the exceptions taken thereto on motion for a *nunc pro tunc* entry for such purpose. *p. 629.*

Same.—*Proceeding for Nunc Pro Tunc Entry.*—*Not Independent Action.*—A motion for a *nunc pro tunc* entry to correct a record is not an independent action requiring petition and summons, but is auxiliary to the preceding record in the case. *p. 629.*

Same.—*Correction of Record.*—*Inherent Power of Court.*—The court has the inherent power to make its records speak the truth, and such power does not cease to exist at the close of the term of court at which the order or ruling was made. *p. 629.*

Same.—*Nunc Pro Tunc Entry.*—*Motion.*—*Notice.*—A motion for a *nunc pro tunc* entry need not be filed before the notice to the adverse party is served, nor at any specified time preceding the date named in the notice for making the motion. *p. 629.*

Master and Servant.—*Interurban Railroads.*—*Common Laborer.*—*Fellow Servant.*—One in the employ of an interurban railway company as a common laborer repairing the tracks is not a passenger while being carried to and from his work in a work-car, but an employe and a fellow servant with those in charge of and operating the car. *pp. 630, 631.*

Vol. 33—40

Indianapolis, etc., Transit Co. *v.* Andis.

MASTER AND SERVANT.—*Fellow Servant.*—*Interurban Railroads.*—*Pleading.* —*Conclusion.*—Where the facts pleaded in an action against an interurban railroad company for personal injuries show that plaintiff, when injured, was not a passenger, but was a fellow servant with the motorman and conductor, such facts can not be controlled by the pleader's conclusion that the work in which plaintiff was engaged was not connected with or incident to or a part of the employment or work of the motorman. *pp. 631–633.*

SAME.—*Employers' Liability Act.*—*Interurban Railroads.*—An electric car is not a "locomotive engine" nor a "train upon a railway" within the meaning of the fourth subdivision of §7083 Burns 1901 making railroads or other corporations, except municipal, liable for injuries suffered by employes, in the exercise of due care, caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch-yard, shop, round-house, locomotive engine, or train upon a railway. *pp. 634–638.*

SAME.—*Interurban Railroads.*—*Personal Injuries.*—*Complaint.*—*Incompetent Fellow Servant.*—A complaint against an interurban railroad company for injuries to an employe while returning from his work based upon the negligence of a boy whom the defendant had placed in charge of a switch, alleging that the boy was inexperienced, and not of sufficient age or discretion to be intrusted with such duties, which defendant well knew, is insufficient for failing to allege that plaintiff had no knowledge of such incompetency prior to the injury. *p. 638.*

SAME.—*Interurban Railroads.*—*Employers' Liability Act.*—*Negligence of Person in Charge of a Switch.*—No liability is created by the fourth subdivision of §7083 Burns 1901 for an injury of an employe of an interurban railroad company caused by the negligence of a person in charge of a switch. *p. 638.*

SAME.—*Interurban Railroads.*—*Personal Injuries.*—*Defective Car.*—*Proximate Cause.*—*Complaint.*—A complaint in an action against an interurban railroad company by an employe for damages for injuries sustained while he was returning from work, alleging that the work-car was old, worn, and defective, and in such condition as to be dangerous to human life, which was known to defendant and unknown to plaintiff, is bad for failing to show that the defective condition of the car was the proximate cause of the injury *pp. 638, 639.*

From Henry Circuit Court, *John M. Morris*, Judge.

Action by Charles Andis against the Indianapolis & Greenfield Rapid Transit Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*W. A. Brown, J. P. Walker* and *E. J. Binford,* for appellant.

*M. E. Forkner, W. F. McBane, U. S. Jackson* and *R. L. Mason,* for appellee.

Indianapolis, etc., Transit Co. v. Andis.

Robinson, J.—Action by appellee for damages for personal injuries. The suit was brought in the Hancock Circuit Court, and the venue changed to the Henry Circuit Court.

It is first claimed by appellee that the pleadings are not properly in the record. The caption of the transcript of the clerk of the last-named court recites that on a day named there was filed in his office "the following transcript from the clerk of the Hancock Circuit Court, in these words, to wit." This is followed by the transcript of that clerk containing what purports to be a transcript of the proceedings in that court, and also the six paragraphs of complaint and separate demurrers. Appellant's precipe directed to the clerk of the Henry Circuit Court asks for "a full and complete transcript of all rulings * * * had in said court in said cause as the same appear of record * * * and of all papers filed therein, including all pleadings." His final certificate states that the record contains "a full, true, and complete transcript * * * of all papers filed therein, including all pleadings."

Upon a change of venue the clerk of the court from which the change is taken is required to "transmit all the papers and a transcript of all the proceedings to the clerk of the court of the county to which the venue is changed." This statute (§417 Burns 1901) further makes it the duty of the clerk to receive the papers and transcript, and docket the action in its order among the other causes of the court. It was the duty of the clerk of the Henry Circuit Court to copy the complaint and demurrers into his transcript as the original papers received by him. It does not affirmatively appear that the original papers were filed in the Henry Circuit Court, nor does it affirmatively appear that they were not so filed. But the clerk certifies that the record here contains a full and true transcript "of all papers filed therein, including all pleadings." We think it suffi-

ciently appears that the record contains a copy of all the pleadings in the case, and it is not claimed that it does not contain a correct copy. Moreover, after the venue was changed, there was an appearance in the Henry Circuit Court by both parties, and the court overruled the demurrers to the complaint, and the cause proceeded to trial and final judgment without any objection that the original pleadings were not on file in that court. If the originals were not filed, we think we would be authorized, from the whole record, to treat the copy of the pleadings set out in the copy of the transcript made on the change of venue as a sufficiently certified copy of the original pleadings. See *Cox* v. *Pruitt,* 25 Ind. 90; *Smith* v. *Jeffries,* 25 Ind. 376; *Southern Ind. R. Co.* v. *Martin,* 160 Ind. 280.

There was a separate demurrer to each of the six paragraphs of complaint. An order-book entry recites: "Come the parties by counsel; thereupon the court, being advised, overrules the demurrer to the complaint, to which ruling of the court the defendant at the time objected and excepted." At the second succeeding term after final judgment was rendered appellant moved for a *nunc pro tunc* entry showing the actual ruling of the court upon the separate demurrers to the different paragraphs of complaint and the exceptions taken thereto by appellant. Notice was given that the motion would be heard February 17, 1903, and on that day proof was made to the court that the motion was served on one of the appellee's attorneys on February 13, and on the appellee on February 14, 1903. Appellee, by his counsel, appeared specially on the day set for the hearing, and by plea in abatement objected to the notice as insufficient on grounds stated in the plea and to the jurisdiction of the court over his person, appellee then being a resident of Hancock county, and that the court could obtain jurisdiction after the term only by proper petition and summons. This plea was struck out on motion. The motion was thereupon submitted to the court, and upon a

hearing the court ordered that the *nunc pro tunc* entry should be made.

It is unnecessary to discuss the evidence offered in support of the motion. It was not contradicted, and we think was sufficient to authorize the order that the entry should be made. There was a written memorandum of the court's action stating: "Demr. to complaint overruled; answer filed." As we have seen, there was a separate demurrer to each paragraph of the complaint. There was no demurrer to the whole complaint. The memorandum shows there was a ruling by the court upon one or all the paragraphs of complaint. This was sufficient to admit parol proof.

Nor do we think jurisdiction could be obtained only by petition and summons. Such a proceeding is not an independent action, but is auxiliary to the preceding record in the case. A proceeding by complaint and summons as in ordinary actions has been held irregular. *Jenkins* v. *Long,* 23 Ind. 460. The purpose of such a proceeding is not to alter or amend the court's action, but to have recorded what the court actually did. Making a ruling and the entry of such ruling are separate and distinct. The former can not be altered or amended; the latter may be. The purpose is not to supply any omission from the court's order or ruling, but to supply an omission from the record of such order or ruling. The court had the inherent power to make its record speak the truth as to what was actually done—to have its order and ruling as actually made correctly recorded. This power did not cease to exist at the close of the term of court at which the order or ruling was made. Nothing new was to be introduced into the prior proceedings had when all the parties were before the court. The motion need not be filed before the notice is served, nor at any specified time preceding the date named in the notice for making the motion. *Makepeace* v. *Lukens,* 27 Ind. 435, 92 Am. Dec. 263. The correction sought must necessarily be made in the court where the mistake was

committed. No other court could acquire jurisdiction of the subject-matter. No claim seems to have been made that the notice did not give appellee ample time. See *Latta* v. *Griffith,* 57 Ind. 329. The court had jurisdiction of the subject-matter, and we think the notice given was sufficient to give the court jurisdiction of the person. See, *Smith* v. *State,* 71 Ind. 250; *Reily* v. *Burton,* 71 Ind. 118; *Bales* v. *Brown,* 57 Ind. 282; *Newhouse* v. *Martin,* 68 Ind. 224; *Miller* v. *Royce,* 60 Ind. 189; *Makepeace* v. *Lukens, supra; Chissom* v. *Barbour,* 100 Ind. 1; *Jenkins* v. *Long, supra.*

Appellant owns and operates an interurban railway line from Irvington to Greenfield, carries passengers and freight for hire, and operates its cars by electricity, which is the only power used in propelling its cars over its line. On May 27, 1901, appellee was in the employment of appellant as a laborer, and, with other employes of appellant, was engaged in common labor in and along appellant's tracks, at different places, in repairing the same. Appellant carried appellee and such employes to and from their work and from point to point along the line in a car known as a "work-car," controlled by one of appellant's motormen. While appellee was returning from work in the evening in this car, it was run in on a switch, which was in charge of a switchman, to permit passenger-cars to pass on the main track, and while standing on the switch a passenger-car, in charge of a motorman and conductor, was run in on the switch and against the work car, injuring appellee.

The first and fourth of the six paragraphs of complaint charge the negligence in operating the passenger-car which ran into the work-car upon the motorman in charge of the passenger-car. These two paragraphs are similar, except that the fourth paragraph avers that the work in which appellee was engaged was upon and along appellant's tracks, repairing the same, and was not connected with or incident to or a part of the employment or work of the

motorman. The second paragraph charges the negligence in operating the passenger-car upon the conductor thereof. Against the demurrers it is argued that these paragraphs are sufficient under the rules of the common law and under the employers' liability act of 1893. It is now well settled that appellee, while being carried by appellant in its work-car to and from his work, is to be regarded not as a passenger but as an employe, and that while being so carried he is a fellow servant with those in charge of and operating appellant's cars. *Bowles* v. *Indiana R. Co.,* 27 Ind. App. 672, 87 Am. St. 279; *Capper* v. *Louisville, etc., R. Co.,* 103 Ind. 305; *Ohio, etc., R. Co.* v. *Tindall,* 13 Ind. 366, 74 Am. Dec. 259; *Indianapolis, etc., Transit Co.* v. *Foreman,* 162 Ind. 85.

It is quite true that if appellant undertook to carry appellee to his home, whether as a passenger or an employe, it owed to him a duty, and, if appellee's status while in the car was that of an employe appellant owed to him the duty of exercising ordinary and reasonable care for his safety. But the negligence charged is not negligence of appellant, but negligence of the motorman and conductor. The facts averred showed that appellee, when injured, was not a passenger, but was a fellow servant with the motorman and conductor; and these facts, specially averred, can not be controlled by the pleader's conclusion that the work in which he was engaged was not connected with or incident to or a part of the employment or work of the motorman.

Counsel for appellee cite the cases of *Gillenwater* v. *Madison, etc., R. Co.,* 5 Ind. 339, 61 Am. Dec. 101, and *Fitzpatrick* v. *New Albany, etc., R. Co.,* 7 Ind. 436, as establishing the doctrine that a laborer employed by a railroad company in work not connected with the operation of the road is not a co-employe with the servants of the company operating the road. These cases do so hold, but a different holding was announced in *Ohio, etc., R. Co.* v.

*Tindall, supra.* And the case of *Slattery* v. *Toledo, etc., R. Co.,* 23 Ind. 81, after referring to these cases, follows the doctrine of the Tindall case, and quotes with approval the following language from *Wright* v. *New York Cent. R. Co.,* 25 N. Y. 562: "Neither is it necessary, in order to bring a case within the general rule of exemption, that the servants, the one that suffers and the one that caused the injury, should be at the time engaged in the same operation or particular work. It is enough that they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties and services tending to accomplish the same general purposes, as in maintaining and operating a railroad, operating a factory, working a mine, or erecting a building. * * * The question is, whether they are under the same general control." And in the case of *Columbus, etc., R. Co.* v. *Arnold,* 31 Ind. 174, 99 Am. Dec. 615, the Gillenwater and Fitzpatrick cases are disapproved, the court saying: "But this limitation of the exemption of the company from liability in such cases is not recognized in any of the subsequent cases; and it is now settled in this State, that the employer is not liable for an injury to one employe, occasioned by the negligence of another engaged in the same general undertaking." The doctrine of the Arnold case is approved in *Evansville, etc., R. Co.* v. *Barnes,* 137 Ind. 306.

In *Capper* v. *Louisville, etc., R. Co., supra,* appellant was a laborer working at removing loose and projecting pieces of stone from the sides and roof of a tunnel, and placing timbers to support the sides and roof thereof, and while attempting to get upon a freight-train of appellee to go to another tunnel to work the engineer and servants of appellee in charge of the engine, without warning to appellant, violently forced the car forward with great violence, throwing appellant under the car. "This case," said the court in its opinion, "is that of a servant engaged in the

work of constructing and repairing tunnels upon the line of the railroad, and receiving an injury while being carried from one point to another upon the line of his employer's road. The decisions of our court are that one who is employed to do work upon the track of a railroad is a coservant with the engineer and others in charge of the train that carries him to and from his work."

It seems clear that the case at bar falls within the rule declared in these later cases that appellee was a fellow servant with the motorman and conductor, and that at common law appellant is not liable for injuries suffered by appellee through the negligence of such fellow servants. See *Wilson* v. *Madison, etc., R. Co.,* 18 Ind. 226; *Thayer* v. *St. Louis, etc., R. Co.,* 22 Ind. 26, 85 Am. Dec. 409; *Ohio, etc., R. Co.* v. *Hammersley,* 28 Ind. 371; *Sullivan* v. *Toledo, etc., R. Co.,* 58 Ind. 26; *Gormley* v. *Ohio, etc., R. Co.,* 72 Ind. 31; *Spencer* v. *Ohio, etc., R. Co.,* 130 Ind. 181; *Justice* v. *Pennsylvania Co.,* 130 Ind. 321; *Clarke* v. *Pennsylvania Co.,* 132 Ind. 199, 17 L. R. A. 811; *Bowles* v. *Indiana R. Co., supra; Indianapolis, etc., Transit Co.* v. *Foreman, supra; Gilman* v. *Eastern R. Corporation,* 10 Allen 233, 87 Am. Dec. 635; *Ewald* v. *Chicago, etc., R. Co.,* 70 Wis. 420, 36 N. W. 12, 5 Am. St. 178; *Manville* v. *Cleveland, etc., R. Co.,* 11 Ohio St. 417; *Keystone Bridge Co.* v. *Newberry,* 96 Pa. St. 246, 42 Am. Rep. 543; *Vick* v. *New York, etc., R. Co.,* 95 N. Y. 267, 47 Am. Rep. 36; *Cunningham* v. *International R. Co.,* 51 Tex. 503, 32 Am. Rep. 632; *Chicago, etc., R. Co.* v. *Moranda,* 93 Ill. 302, 34 Am. Rep. 168; *Holden* v. *Fitchburg R. Co.,* 129 Mass. 268, 37 Am. Rep. 343.

The question remains whether a cause of action has been stated under the first clause of the fourth subdivision of section one of the employers' liability act of March 4, 1893 (Acts 1893, p. 294, §7083 Burns 1901): "That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal in-

jury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases. * * * Fourth. Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, roundhouse, locomotive engine or train upon a railway." Each of the cars of appellant, one of which the motorman and conductor had charge of when this accident occurred, "is what is known as an electric car—that is, a car which is operated and run by electricity alone; and each of said cars is so constructed that it can be and is controlled by a motorman, who takes the place of and discharges the duty which corresponds to that of the engineer and fireman of a locomotive used upon steam railways."

We do not think the electric car in this case comes within the definition of a "locomotive engine" adopted by the Supreme Court in the case of *Jarvis* v. *Hitch,* 161 Ind. 217. In that case it is said that "by the term locomotive engine, used in said clause, the legislature only intended an engine constructed and used for traction purposes on a railroad track." In that case the machine—a pile-driver—consisted of a steam-engine placed on a flat-car at one end with the driver at the other end. The engine was used to lift the hammer and let it drop on the pile. A chain ran from the engine to a sprocket-wheel on the axle under the boiler, and by this means the machine and cars belonging to it were moved from place to place. The same reasoning through which in that case it was held that the machine was not a locomotive engine, within the meaning of that term as used in the employers' liability act, precludes the holding in this case that the electric car is a locomotive engine.

Neither can it be said that an electric car, such as that described in the pleading, comes within the meaning of the term "train upon a railway," as used in the act. An exam-

ination of the various earlier statutes concerning railroads discloses that in the general provisions concerning the organization, construction, and operation of railroads the legislature has used simply the term "railroad," and that it has used it in the generally accepted sense of steam railroad. It is no doubt true that if the language used in the statute is sufficiently comprehensive to cover unknown conditions, and the same language would probably have been used to cover certain conditions had those conditions existed at the time of the enactment, it should be held to apply to such conditions arising subsequent to the enactment. That is, if interurban railways and electric railways had been in operation generally at the time the employers' liability act became a law, and the legislature would probably have used the language it did use in that act, the act should be held to apply to such roads, though not in operation generally until after its enactment. But the scope intended to be given the earlier legislation may, to an extent, at least, be indicated by subsequent legislation upon the same general subject-matter. Since the earlier statutes were passed the legislature has itself concluded, as indicated by the language used, that the general term "railroad" does not include "interurban street railroad," or "suburban street railroad" (§5468a Burns 1901), or "electric roads" (§§5158b, 5158d Burns 1901), or "street railroads" (§5450 et seq. Burns 1901). Thus §5158b, supra, provides that "when in case two or more railroads, or a railroad and an electric road crossing each other at a common grade, or any railroad crossing a stream"—providing for a system of interlocking switches. In that statute the word "railroad" is clearly distinguished from "electric road," and the legislature must have taken it for granted, by not adding any qualifying word, that the word "railroad" would be understood to mean steam road. The general railroad law (§5160 Burns 1901) gave railroads the right to appropriate lands; another statute

(§5468a Burns 1901) gives the same power to "any street railroad company heretofore or hereafter organized under the laws of the State of Indiana, and desiring to construct, or having heretofore constructed, any interurban street railroad or any suburban street railway." It will be noted that the statute last cited classes an interurban street railroad under and as part of a street railroad. See *Mordhurst* v. *Ft. Wayne, etc., Trac. Co.,* 163 Ind. —. Other instances might be given to show that when the legislature intended a statute to apply to a street railroad or an electric road the road was so designated in the act, and that when steam railroad is intended the word railroad only is used.

Moreover, we must assume that when the legislature passed the employers' liability act of March 4, 1893, it was dealing with and acting upon existing facts within its knowledge. The mischief felt and intended to be remedied was then certainly known. It can not be assumed that the statute was passed before there was an apparent necessity for its enactment. When that act was passed, aside from street railroads in cities, steam railroads were the only railroads in operation generally, and the dangers arising from the operation of railroads were to a very large extent only such dangers as arose from the operation of steam railroads. At that time there were few, if any, electric roads, as now known, in existence in this State. The reasons for changing the law relating to master and servant, as that act changed it, were at that time to be found in the many dangers to which the numerous persons engaged in operating steam railroads were exposed, and the many different departments of labor in which the workmen were employed. It is quite true that an electric railroad, as we now know such roads, might be called a railroad; but, as said in *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, 17 L. Ed. 571: "It does not follow, that when a newly invented or discovered thing is called by some familiar word, which

comes nearest to expressing the new idea, that the thing so styled is really the thing formerly meant by the familiar words. * * * The track on which the steam cars now transport the traveler or his property is called a road, sometimes, perhaps generally, a railroad. The term road is applied to it, no doubt, because in some sense it is used for the same purpose that roads had been used. But until the thing was made and seen, no imagination, even the most fertile, could have pictured it, from any previous use of the word road. So we call the enclosure in which passengers travel on a railroad, a coach; but it is more like a house than a coach, and is less like a coach than are several other vehicles which are rarely if ever called coaches." See, also, *Funk* v. *St. Paul City R. Co.,* 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. 608; *Sams* v. *St. Louis, etc., R. Co.,* 174 Mo. 53, 73 S. W. 686, 61 L. R. A. 475.

In *Fallon* v. *West End St. R. Co.,* 171 Mass. 249, 50 N. E. 536, in determining whether a street railway car operated by electricity upon a street railway track was a "locomotive engine or train upon a railroad," the court said: "But we think that by the words 'locomotive engine or train upon a railroad' must be understood a railroad and locomotive engines and trains operated and run or originally intended to be operated and run in some manner and to some extent by steam. This undoubtedly was the sense in which the words were used by the legislature when the statute was enacted, and we do not feel justified now in giving to them the broad construction for which the plaintiff contends. Possibly a railroad, where the motive power has been changed in part or altogether from steam to electricity, or some other mechanical agency, but which retains in other respects the characteristics of a steam railroad, would come within the purview of the act. It is not necessary, however, to decide that question now. The defendant is a street railway operated by electricity, and run-

ning the usual street car in the usual manner. We think that the car belonging to it, and operated in the manner in which cars upon street electric lines usually are, can not be said to be a locomotive engine or a train upon a railroad within the meaning of the statute in question."

In discussing the expression "upon a railway" as used in the act, the author of Dresser, Employers' Liability, §80, says that the expression "means a steam railway or one originally operated as such. This section of the act was passed to meet the dangers arising from steam railroads, and it was enacted at a time before electric railways had been adopted, or street railways had become a source of peculiar danger." See, also, *Whatley* v. *Zenida Coal Co.,* 122 Ala. 118, 26 South. 124; *Jarvis* v. *Hitch,* 161 Ind. 217.

The fifth paragraph of the complaint proceeds on the theory that the injury was caused by the negligence of a boy whom appellant had placed in charge of the switch. It is averred that the boy was young and inexperienced, and not of sufficient age or discretion to be intrusted with such duties, which appellant knew. If this paragraph sufficiently charges the incompetency of the switch boy, it is still insufficient for failing to aver that appellee had no knowledge of such incompetency prior to the injury. See *Bowles* v. *Indiana R. Co.,* 27 Ind. App. 672, 87 Am. St. 279, and cases cited; *Indianapolis, etc., Transit Co.* v. *Foreman,* 162 Ind. 85, and cases cited.

The fifth paragraph is insufficient under the employers' liability act, as-it is held that no liability is created by the act for injuries caused by the negligence of persons in charge of a switch. *Baltimore, etc., R. Co.* v. *Little,* 149 Ind. 167; *Indianapolis, etc., Transit Co.* v. *Foreman, supra.*

The sixth paragraph of complaint avers that the work-car was old, worn, and defective, and in such condition as to be dangerous to human life, which was known to appel-

lant and unknown to appellee. But the pleading fails to show that this defective condition of the car was the proximate cause of the injury. No facts are averred showing any causal connection between the defective condition of the car and the injury. It is not that because of this defective condition of the car the injury occurred. Facts are averred showing that because of the defective condition of the car it was run in on the switch, and that appellant's agents in charge of the work-car negligently and carelessly failed to communicate that fact to the train dispatcher; "that while said defective work-car was so placed on switch No. 2, with plaintiff. and other laborers thereon, through the negligence of defendant's agents, the east-bound passenger-car was carelessly and negligently run into and upon said side-track at a high and dangerous rate of speed, to wit, thirty-five miles per hour, and the same collided with said work-car so containing plaintiff, mashing and breaking said work-car, and throwing plaintiff against seats and timbers," injuring him. If these averments mean that the work-car was placed on the switch through the negligence of appellant's agents, it does not appear by whom the passenger-car was run in on the switch; and if the language means that the agents in charge of the passenger-car negligently ran the same upon the switch and into the work-car, what we have already said upon other paragraphs is applicable.

The separate demurrer to the first, second, fourth, fifth, and sixth paragraphs of complaint should have been sustained. Judgment reversed.