## INDIANA UNION TRACTION COMPANY v. PRING.

[No. 5,923. Filed February 18, 1908.]

1. PLEADING.—*Complaint.—Master and Servant.—Duties.—How Alleged.*—A complaint alleging that "it was the duty of the master" to do certain things, is insufficient, it being necessary to allege the facts from which the duty flows. p. 249.

2. SAME.—*Complaint.—Master and Servant.—Interurban Railroads.—Negligence of Trainmaster in Running Car.*—A complaint alleging that the trainmaster, who had general charge of the cars of an interurban railroad, personally took charge of a car and negligently, and in violation of the rules, ran into another car, causing injuries to plaintiff, a checkman, states no cause of action, since the trainmaster was performing a fellow servant's duties. p. 250.

3. MASTER AND SERVANT.—*Incompetent Servants.—Interurban Railroads.*—An interurban railroad company is liable for injuries caused by the employment and retention in service of an incompetent servant. p. 251.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by James A. Pring against the Indiana Union Traction Company. From a judgment on a verdict for plaintiff for $4,000, defendant appeals. *Reversed.*

*James A. Van Osdol, Louis B. Ewbank, Rollin Warner* and *William A. Kittinger,* for appellant.

*Templer & Ogle* and *George H. Koons,* for appellee.

HADLEY, P. J.—This was an action brought by appellee against appellant for injuries sustained by him while acting as checkman, or freight and express messenger, on the freight- and express-car of appellant.

The complaint is in two paragraphs. Separate demur-

rers were filed to each, which were overruled. Trial, with verdict for appellee. Motion for a new trial overruled, and judgment for appellee on the verdict.

The rulings on the demurrers and on the motion for a new trial are assigned as errors.

The first paragraph, among other things, avers that appellant owns and operates an interurban electric railway; that along its line it has numerous switches and stops where cars pass each other, which stops are numbered; that on the line from Anderson to Alexandria are stops designated as thirty, thirty-one, thirty-two and thirty-three; that along said line appellant operated passenger- and express-cars; that appellant, in the operation of said line, employed a number of men in the capacities of motormen, conductors, checkmen on its express-cars, superintendent of freight, general train master and train dispatcher, master mechanics and various other persons for various purposes; that it was the duty of the train dispatcher to give orders by telephone to the trainmen, operating cars along appellant's lines, where to stop and where to pass other cars, and when to proceed from station to station, and it was the duty of such trainmen to obey such orders; that at the time of the accident appellant had in its employ, as general train master, Joseph Mahoney; that among his duties as such train master was the authority and right to direct the make-up of its crews, to take out any of its cars and to run them over its lines, to supervise and direct its trainmen, except its express agents on its express-cars, in the operation of its cars, and to take out and run cars himself; that as general train master he represented the appellant in all things pertaining to the operation of the cars and crews operating them, except its checkmen and express agents; that his jurisdiction extended over all the lines of appellant.

The complaint then attempts to set out the duties of the appellee as checkman, by which it appears that he was required to go with the car to which he was attached and look

after the reception and discharge of the freight and express matter, checking up the same and keeping an account thereof; that he was on his car in the discharge of his said duties at the time of the injury; that the trainmen of his car were properly proceeding along said line under the orders of the train dispatcher; that said Joseph Mahoney, while in appellant's employ and while acting for and on behalf of appellant, did take a crew of men on one of appellant's cars, and, while said men and cars were subject to his order and control, recklessly and negligently proceeded north in the direction of the car on which appellee was employed, without orders from the appellant's train dispatcher, and against the rules of appellant; that while so in charge of said car, and so representing the appellant, Mahoney recklessly and negligently ran the same at a high rate of speed, and on the time of the car on which appellee was performing his duties, and collided with the same, whereby appellee was injured; that the negligence of appellant and Mahoney in charge of said car aforesaid was the proximate cause of said injury. There are many other averments in the complaint, but these are sufficient to present the questions argued.

Under the decisions of the Supreme Court, we must hold this paragraph insufficient. Under the rules established by these decisions there is no sufficient averment of the

1.  duties of the different employes of appellant where the same is necessary to be shown. To aver of an employe that it was his duty, etc., is merely the averment of a conclusion, and is not sufficient, the facts showing the duty should be averred. *Pittsburgh, etc., R. Co.* v. *Peck* (1905), 165 Ind. 537; *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, and cases cited.

In the case last cited the court says: ''The general rule in such cases is that the pleader must distinctly set forth in his complaint the facts which he claims creates the duty that has been violated, and from the facts so stated the

court will determine, as a matter of law, the existence or the nonexistence of the duty.  *  *  *  It is also averred that it was the 'duty' of Orrell before the arrival of trains to look out of the window and examine the defendant's track, and observe and note the condition of said switch, as to being open or closed, and to signify by the use of the semaphore the safe or unsafe condition of the track and switch to those employes approaching the station with their trains, but as in the preceding paragraphs, there is a total failure to inform the court by averment how it became Orrell's duty to inspect the switch before the arrival of trains, whether it was enjoined upon him by the terms of his contract of employment, as it was to operate and control the semaphore, or whether by a rule of the company or by a prevailing custom, or whether it sprang from the mere surmise of the pleader.''

This paragraph of the complaint is also bad for the reason that it clearly appears that the negligence that caused the injury was the negligence of an employe in the operation of the road while performing the servant's duty, and who was therefore a co-servant with appellee. The allegations show that appellee was an employe in the transportation department of appellant, the same as Mahoney; that Mahoney was running the car that caused the collision; that the collision was not caused by any defect in track, roadbed, equipment or appliances, but by negligent operation. This is the employe's duty, and not the master's. This is clear under the case of *Chicago, etc., R. Co.* v. *Barker, supra,* where the court say: ''The duties of master and servant are correlative. On the one hand it is the duty of the master to employ none but competent servants, to use due care in providing his servants with safe machines and appliances to work with, and to exercise reasonable diligence to keep them in good repair; and to the end that they be kept in good repair he is required to make inspection at reasonably frequent intervals. These are du-

ties that the master owes to his servants, the performance of which he cannot delegate to another so as to relieve himself from responsibility for their nonperformance or imperfect performance. 20 Am. and Eng. Ency. Law (2d ed.), 55, and cases cited. On the other hand, the duty of operating the machine in all its details and departments is a duty the servant owes the master, and when any duty connected with operating any part of the machine is delegated to another by the master, such person performing such duty is a fellow servant of all others engaged by the master in carrying on the common enterprise. *Indianapolis, etc., Transit Co.* v. *Foreman* [1904], 162 Ind. 85, 102 Am. St. 185; *Hodges* v. *Standard Wheel Co.* [1899], 152 Ind. 680; *Baltimore, etc., R. Co.* v. *Little* [1897], 149 Ind. 167; *Indianapolis, etc., Transit Co.* v. *Andis* [1904], 33 Ind. App. 625; *Cleveland, etc., R. Co.* v. *Brown* [1896], 73 Fed. 970, 20 C. C. A. 147; 2 Labatt, Master & Serv., p. 1726; *St. Louis, etc., R. Co.* v. *Needham* [1894], 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833. In the last case it is said: 'The roadbed, ties, tracks, stations, rolling-stock, and all the appurtenances of a well-equipped railroad together constitute a great machine for transportation. It is the duty of the railroad company to use ordinary care to furnish a sound and reasonably safe machine, to use due diligence to keep it in proper repair, and to use ordinary care to employ reasonably competent servants to operate it; but, when this duty is performed, the duty rests upon the servant to operate it carefully.' ''

The second paragraph contains substantially the same averments as the first, in substantially the same language and in addition thereto it avers the negligence to be that of the master in employing and keeping in its employ an incompetent servant, to wit, Mahoney. This latter duty, as we have shown, is a duty of the master which, if negligently performed, renders the master liable for any injury occasioned thereby, and this paragraph

would therefore be good if it were not that the averments as to the duties of the various employes were defective in the same manner as the corresponding averments in the first paragraph. And for this reason the demurrer thereto should have been sustained.

Judgment reversed.