## INDIANA UNION TRACTION COMPANY *v.* PRING.

[No. 7,149. Filed October 26, 1911. Rehearing denied March 13, 1912. Transfer denied June 4, 1912.]

1. LIMITATION OF ACTIONS.—*Complaint.—Amendment Operating to Defeat Statute.*—An amendment to a complaint will not be permitted when it will operate to defeat the statute of limitations. p. 575.

2. LIMITATION OF ACTIONS.—*Action for Negligence.—Complaint.— Amendment.—Amendment Not Amounting to Independent Charge of Negligence.—Effect.*—In an action for injuries to an interurban railway motorman, where the complaint charged that on the day of the injury it was cold, sleeting, raining, lightning, freezing, foggy, dark and cloudy and that ice was frozen on defendant's telephone wires so that they were useless in directing the movement of defendant's cars, that defendant's trainmaster, knowing such fact and knowing that plaintiff was then engaged on a south bound car somewhere between two sidings, manned a car with a crew and himself acting as motorman thereon caused the same to proceed northbound as a wild car without a schedule, that carelessly and negligently failing to inform the train dispatcher of his act he proceeded with said car to a point where defendant's double track merged into a single track, where, for the first time, he attempted to notify the dispatcher by telephone that he had ordered out said wild car, and being unable to communicate with the dispatcher because of the useless condition of the wires, he negligently ordered and directed the car to continue on its journey northward along the single

track, thereby causing a collision in which plaintiff was injured, that part of the complaint descriptive of the condition of the wires having been inserted by way of amendment after the expiration of the time limited for the commencement of a new action, was not for that reason subject to a motion to strike out, since such matter did not amount to an independent charge of negligence as a proximate cause of the injury, but simply gave character and degree to the charge of negligence in ordering or taking out the wild car under the existing circumstances. p. 575.

3.  PLEADING.—*Complaint.—Amendment.—Right to Amend.*—Where a recovery on the original complaint would operate as a bar to a recovery on the complaint as amended, or if the amendment will not deprive defendant of any defense he had to the original suit, the plaintiff is entitled to amend.   p. 577.

4.  APPEAL.—*Review.—Law of the Case.*—Although a former decision of a case on appeal is the law of the case where the question presented on a subsequent appeal remains the same, it is not necessarily so as to new or additional questions presented on such subsequent appeal.   p. 578.

5.  MASTER AND SERVANT.—*Injury to Servant.—Interurban Railroad. —Negligence of Vice-Principal.—Complaint.—Sufficiency.*—In an action by an interurban railway motorman for injuries in a collision with a car negligently sent out without a schedule by defendant's trainmaster, where the complaint alleged that such trainmaster had jurisdiction over the operative department throughout defendant's entire system, with authority to employ and discharge men and to decide when and under what conditions a special car should be sent out, that said trainmaster, knowing the plaintiff was engaged on a southbound car somewhere between two certain sidings, and knowing the impossibility of directing the movements of defendant's cars owing to the severe weather conditions which had rendered defendant's telephone system useless for that purpose, and while carelessly and negligently failing to inform defendant's train dispatcher of his intention, manned a car with a crew and ordered said car to proceed northbound, with himself acting as motorman thereon, that on arriving at a point where defendant's double track merged into a single track, he attempted to communicate with the train dispatcher by telephone, and, being unable to do so, negligently ordered and directed said car to proceed on the journey northward, thereby causing the collision in which plaintiff was injured, the complaint sufficiently showed the violation of a duty owing by the trainmaster as vice-principal, and that the negligence charged was not that of a co-servant with the plaintiff.   p. 578.

6. MASTER AND SERVANT.—*Injury to Servant.—Interurban Railroads.—Negligence of Vice-Principal.—Evidence.*—In an action by an interurban railroad motorman for injuries received in a collision, where it was alleged that defendant's trainmaster, without notice to the train dispatcher, ordered out a special car and directed it to proceed northbound, thereby causing the collision in which plaintiff was injured, evidence that the movement of defendant's cars was directed by means of a telephone system and that on the day of the injury such train master knew that the telephone system was not in working order because of the severe weather conditions, was admissible as bearing on the character of the trainmaster's conduct and for the purpose of determining whether he was negligent in doing what he did.   p. 579.

7. TRIAL.—*Reception of Evidence.—Purpose.*—Where evidence is competent for any purpose no error can be predicated on its admission.   p. 579.

8. MASTER AND SERVANT.—*Injury to Servant.—Interurban Railroads. — Incompetency of Vice-Principal. — Evidence. — Specific Acts.*—Where a paragraph of complaint in an action against an interurban railroad company for personal injuries proceeded on the theory of the incompetency of defendant's trainmaster, evidence of specific acts of his prior incompetency was admissible to show knowledge of his incompetency on the part of the defendant.   p. 579.

9. TRIAL.—*Reception of Evidence.—Evidence Competent for Certain Purpose.—Limiting Effect.—Instruction.—Failure to Request.*—Where evidence is admissible for a certain purpose, and there is a probability that the jury may consider it on the main proposition in the case, the party likely to be prejudiced thereby may tender an instruction in which the application of such evidence is properly restricted and limited, and failing so to do, such party cannot be heard to complain of its prejudicial effect.   p. 580.

10. MASTER AND SERVANT.—*Injury to Servant.—Interurban Railroad.—Vice-Principal.—Fellow Servant.—Evidence.*—In an action by a motorman against an interurban railroad company for personal injuries, where it was shown that by the rules of defendant extra trains did not appear on the time tables and had no rights except those given them by the train dispatcher, and were not to be run without his orders, and that all interurban trains were required to report to him at certain sidings, and it was further shown that defendant's general trainmaster, while in full charge of the transportation department, ordered out and manned an extra car with himself acting as motorman thereon, and without notifying the train dispatcher of his intention, ordered and directed the car to proceed northbound to a siding, whence he

attempted to notify the train dispatcher by telephone and, being unable to so notify the dispatcher, ordered that said car continue northbound thereby causing a collision in which plaintiff was injured, the evidence was sufficient to sustain a verdict for plaintiff, since the mere fact that such trainmaster acted as motorman did not lose him his identity as a representative of his master so as to render the negligence that of a fellow servant.   pp. 580, 582.

11.   MASTER AND SERVANT.—*Negligence.—Vice-Principal Performing Duties of Servant.*—Where a vice-principal undertakes to perform for the master the duties and service of the servant, he at the time having authority so to do, his negligence is performing such service is the negligence of a coservant, but if he acts in his capacity of vice-principal, and not in that of a co-laborer, the master is liable for his negligent act.   p. 581.

12.   MASTER AND SERVANT.—*Duty of Master.*—The master must not expose his servants, while conducting his business, to perils or hazards which may be provided against by the exercise of due care and proper diligence on the part of the master.   p. 583.

13.   MASTER AND SERVANT.—*Acts of Servant Within Scope of Authority.—Liability.*—When an employe acts as and for the master, and acts within the scope of his authority, he binds his master the same as if the master had himself acted, and when a master delegates to a servant the performance of a duty which rests on the master alone, he is liable for the manner in which it is performed.   p. 583.

14.   MASTER AND SERVANT.—*Vice-Principal.—Fellow Servants.—Dual Capacity.—Negligence.—Liability.*—An employe of a master may at the same time be a fellow-servant and an agent or representative of the master, and when such dual capacity exists, his negligent performance of that which he is authorized to do as agent or representative of the master renders the master liable in damages for injury resulting therefrom to a servant who is himself without fault.   p. 587.

15.   MASTER AND SERVANT.—*Injury to Servant.—Negligence.—Negligence of Fellow Servant Contributing to Injury.—Liability.*—Where the negligent act of the master's representative is the proximate cause of an injury to a servant, the mere fact that the negligent act of a co-servant contributes to the injury will not defeat the servant's right to recover.   p. 588.

16.   MASTER AND SERVANT.—*Injury to Servant.—Negligence.—Proximate Cause.—Instruction.*—An instruction in which the jury was told that if it believed from the evidence that the defendant was guilty of the negligence charged and that the injuries complained of "were the natural consequences of such negligence, and such as might have been foreseen and reasonably anticipated as the result of such negligence, then such negligence should be regarded

as the proximate cause of the injury," sufficiently embodied the factor of probability of the consequence of the negligence without the use of the word "probable," and was not erroneous.   p. 589.

17.   MASTER AND SERVANT.—*Injury to Servant.—Interurban Railroads.—Incompetency of Vice-Principal.—Burden of Proof.—Instruction.*—In an action for injuries to an interurban railroad motorman, caused by a collision with a car being operated by defendant's general trainmaster, where the complaint proceeded on the theory of the incompetency of such trainmaster, an instruction that the burden was on defendant to show that plaintiff knew of such trainmaster's alleged incompetency was erroneous, since the burden was on plaintiff to show that he had no such knowledge.   p. 590.

18.   APPEAL.—*Review.—Harmless Error.—Instruction as to Burden of Proof.*—Where, in an action against an interurban railroad company for personal injuries, based on the theory of the incompetency of defendant's trainmaster, the plaintiff produced sufficient affirmative proof to justify the finding that he had no knowledge of the incompetency charged, and no proof to the contrary was offered, an instruction placing the burden on defendant to prove that plaintiff knew of such incompetency, although erroneous, was harmless.   p. 590.

19.   MASTER AND SERVANT.—*Injury to Servant.—Interurban Railroads. — Operation. — Duty of Master. — Vice-Principal. — Negligence.—Instructions.*—In an action by an interurban railway motorman for injuries received in a collision with a wild car ordered out by defendant's trainmaster without notice to defendant's train dispatcher, and which was operated by such trainmaster himself as motorman, an instruction was not erroneous which told the jury that the ordering of the starting of its trains or cars is an absolute duty of the company and when that duty is entrusted by it to an officer or employe he in discharging the same becomes a vice-principal, for whose negligent act in that respect the company is liable to anyone, employe or otherwise, who without fault is injured thereby, and that the running and operating of its cars is not a duty of the master to the servant, that the operators on such cars are fellow servants and that the master is not liable for injury to its employes by the negligent act of a fellow servant, where the master has used care and diligence in selecting competent servants.   p. 591.

From Randolph Circuit Court; *James S. Engle,* Judge.

Action by James A. Pring against the Indiana Union Traction Company.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*J. A. Van Osdol, Kittinger & Diven,* for appellant.

*Edward R. Templer, Van L. Ogle, George H. Koons* and *George H. Koons, Jr.,* for appellee.

HOTTEL, J.—Action by appellee for damages on account of personal injury received in a collision while in the employ of appellant as checkman, engaged in handling and checking freight and express matter on one of appellant's electric cars.

The case is before this court on a second appeal, a former judgment in favor of appellee obtained in the Delaware Circuit Court having been reversed because of the insufficiency of the original complaint. *Indiana Union Traction Co.* v. *Pring* (1908), 41 Ind. App. 247, 83 N. E. 733.

After reversal, an amended complaint in three paragraphs was filed in the Delaware Circuit Court. A motion to strike out parts of this complaint was first filed, which was overruled and exception given to appellant, after which demurrers were filed to each paragraph, which were also overruled and exception given to each ruling.

The case was then put at issue by answer in general denial, and a special answer of the statute of limitations, and reply in general denial.

There was a trial by jury, verdict for appellee in the sum of $5,750, judgment on the verdict, motion for new trial overruled and exception by appellant, and appeal to this court.

The errors assigned and relied on are the rulings of the court on the motion to strike out parts of the amended complaint, the demurrers to each paragraph of the complaint, and the motion for a new trial.

The third paragraph of the amended complaint, covering forty pages of appellee's brief, presents all the questions raised by this appeal so far as the pleadings are concerned. The length of this paragraph forbids a copy in this opinion, and we will attempt to set out only enough of the same

to render intelligible our disposition of said questions, and our reasons therefor.

This paragraph alleges the corporate existence of the appellant; the nature and character of its business as a carrier; the employment of appellee; the nature and character of his duties, and the service required of him under his employment; the occurrence of the collision of the two cars; appellee's resulting injuries, and their nature and extent; and alleges, in addition, the following further facts, which we quote from appellant's summary: "That at the time in question all of defendant's express cars were run on orders issued by the defendant through its train dispatcher, by means of telephone; that said Joseph Mahoney was in its employ as general trainmaster, with jurisdiction over its entire system, and that he had authority to take cars to any point on its line; was authorized to employ and discharge men, and do all things necessary to properly superintend defendant's business in the operative department, and was authorized to decide when, how, and under what conditions a special car should be sent out. That Charles Baldwin was its general superintendent of transportation; that the said Mahoney was next in authority and empowered to act in his stead in his absence. Avers that the office of said Mahoney was in the Union Block in the city of Anderson, and avers the proximity of the office rooms of the dispatcher to Baldwin and Mahoney. That defendant's railway track, from the City of Anderson to siding 30, which was located on the northern outskirts of said city, was a double track, at which was located two telephones, used by its motormen and conductors in communicating with its train dispatcher. That on the day in question, it was cold, sleeting, raining, lightning, freezing, foggy, dark and cloudy; ice was frozen upon its telephone wires, and the electric current then prevailing made said telephones useless for directing the movement of its cars; that said telephones and lines were then not in good working order; that defendant and its train dispatcher

and the said Mahoney well knew that fact; and that the said Mahoney, in the absence of the said Baldwin, undertook to and did, man a car with a crew, and sent the same out as a wild car without a schedule, knowing the condition of said telephones and lines that messages could not be sent over the same or received, and knowing that the car on which plaintiff was then engaged was between sidings 33 and 32, coming southward; and the said Mahoney, knowing that the train dispatcher did not know of his intention to send out, take out, or cause to be taken out, said wild car from Anderson to Tipton, the defendant, acting through the said Mahoney, as such trainmaster, carelessly and negligently failed to telephone from the office of the said Mahoney to the dispatcher, while at his office in the Union Block, that he was going to send out said car, and then and there negligently failed to go to the office of the train dispatcher in said Union Block, and so notify him, and that the said Mahoney then and there negligently failed to give said dispatcher notice of the taking out of said wild car, and that the train dispatcher had no knowledge thereof, and 'did then and there decide for the defendant to man said car with one McDonald as its conductor, and himself as motorman; * * * and did then and there order said car from the defendant's barns * * * and did then and there order the said McDonald as conductor, and himself as motorman, to proceed with said car and take the same out * * * northbound, and in obedience to said orders, the said McDonald, as conductor on said car, and himself, the said Mahoney, motoring said car, and performing the work of motorman in the actual running of said car, proceeded with said car northward to switch 30 * * * and attempted for the first time to notify the dispatcher, and said telephones and lines were out of repair and in bad condition, as aforesaid, and useless * · * * said message could not be sent.' That from said switch 30 northward, defendant's line is a single track; that defendant had no rules by

which its employes out on its line could protect themselves from collision with a wild car going in an opposite direction, and no means had been provided for such protection. The complaint sets out a copy of the order upon which the express car proceeded from siding 33 to 32. That the said Mahoney, at said siding 30, knowing that the dispatcher could not be communicated with by telephone, 'then and there decided to order said car to be continued on its journey northbound upon said single track line * * * and negligently ordered said crew, consisting of conductor McDonald, and himself acting as motorman in the doing of the physical, manual work of motoring said car, to proceed northward from said switch 30.' "

It is further alleged "that the negligence of the defendant as aforesaid and the negligence of the said Joseph Mahoney as general trainmaster of the defendant acting for the defendant as such, as the agent and representative of the defendant as aforesaid, and the negligence of said Mahoney while yet in his office in failing to notify said train dispatcher of his intention to send out, take out or order out said wild car as aforesaid, under all the conditions aforesaid, was the sole and approximate cause of said collision and of plaintiff's said injuries received therein as aforesaid; * * * that said accident was caused and plaintiff's injuries received as aforesaid proximately and directly by the negligence of the defendant as aforesaid and by the negligence of the said Joseph Mahoney as general trainmaster of the defendant as aforesaid and representative and agent of the defendant as aforesaid and without any fault or negligence upon the part of the plaintiff."

The first error assigned presents the ruling of the court on the motion to strike out that part of the amended complaint which alleged the defective condition of the telephones and telephone lines. Appellant contends that these averments were absent from the original complaint, and now appear for the first time in the amended complaint, which

was filed more than two years after the happening of the injury, and that under the law an amendment will not be permitted when it will operate to defeat the statute of limitations.

Inasmuch as the same question is raised by appellant in its discussion of the evidence under the issue tendered by its answer of the statute of limitations, to avoid repetition we will at this point discuss the entire question presented by these allegations in this amended paragraph. While there may be some apparent conflict in the application of the law to particular cases, we think the general proposition contended for by appellant, that an amendment will not be permitted when it will operate to defeat the statute of limitations, is well settled by the decisions of this State. *School Town of Monticello* v. *Grant* (1885), 104 Ind. 168, 1 N. E. 302; *Fleenor* v. *Taggart* (1888), 116 Ind. 189, 18 N. E. 606; *Chicago, etc., R. Co.* v. *Bills* (1889), 118 Ind. 221, 20 N. E. 775; *Blake* v. *Minkner* (1894), 136 Ind. 418, 36 N. E. 246; *Fleming* v. *City of Anderson* (1907), 39 Ind. App. 343, 344, 76 N. E. 266.

But do the allegations of this amended pleading, relative to appellant's telephones and telephone lines, amount 2. to an independent charge of negligence in this regard as a proximate cause of appellee's injury?

A careful reading of these allegations discloses that their purpose and intent in the pleading is not to charge independent negligence of defective telephone equipment as the cause, or even as one of the causes of appellee's injury. It seems clear to us that the sole and only negligence charged in this third paragraph of the complaint, as being the cause of appellee's injury, is that of Mahoney.

In this connection it must be remembered that this pleading alleges that at the time complained of appellant ran all its express- and freight-cars as extras, or specials, without a schedule, *upon orders issued* by appellant through its train dispatcher, *by means of telephone.*

As tending to show the negligence of Mahoney's conduct in such matter, and the character and degree of that negli-gence, the pleader sets out in detail the then-existing weather conditions, and the conditions of the telephones and lines as a result thereof, viz.: "That it was cold, sleeting, raining, lightning, freezing, foggy, dark and cloudy"; and "that ice was frozen upon its telephone wires, and the electric current then prevailing made said telephones useless for directing the movement of its cars, that said telephones and lines were then not in good working order; that defendant and its train dispatcher and said Mahoney well knew that fact."

It will be observed from the synopsis of the complaint that there is no charge that appellant negligently or care-lessly suffered or permitted its telephone line to get in such defective and useless condition, but the allegations are all to the effect that the telephone conditions alleged were temporary, the result of extreme, extraordinary and unusual weather conditions, over which defendant had no control, and that notwithstanding the extreme weather conditions, and the telephone conditions resulting therefrom, "the said Mahoney in the absence of said Baldwin undertook to and did man a car with a crew and sent the same out as a wild car without a schedule, *knowing the conditions of said tele-phones and lines that messages could not be sent over the same or received.*"

These allegations simply show, or tend to show, that under the alleged prevailing weather conditions and the resulting telephonic conditions it was negligence on Mahoney's part to send this car out in the first instance, without first knowing that the train dispatcher could notify the car coming from the other direction, and also that Mahoney, before leaving his office or the station at Anderson, on account of said weather and telephone conditions, should have anticipated his *inability* to reach the train dispatcher by telephone from siding No. 30, thereby emphasizing the importance of his advising the train dispatcher of his intention to send out

such car before leaving the office, and of his conclusion to do so before leaving the station, and in this way ˙and to this extent these allegations give character and degree to the negligent acts charged against Mahoney, but in no sense constitute an independent charge of negligence as the proximate cause, or as one of the proximate causes of plaintiff's injuries.

As we view the purpose, force and effect of these allegations of the pleading in this case, the authorities cited by appellant give no support to its contention, and the amendment should be treated as of the date of the filing of the original complaint, in so far as it is affected by the statute of limitations. We think we are clearly supported in this conclusion by the following authorities.

In the case of *Blake* v. *Minkner, supra,* at page 426, the court quotes with approval from Baylies, Code Pleading 323, the following language: "To determine whether 3. an amendment of the complaint will set up a new cause of action, * * * it is a fair test to inquire whether a recovery on the original complaint would be a bar to any recovery under the amended pleading. If it would, the amendment may be allowed; if it would not, the amendment should not be ordered."

In the case of *Fleming* v. *City of Anderson, supra,* at page 349 this court quotes with approval from Buswell, Limitations (1889 ed.) §364, the following language: "The principle is that where the amendment does not change the cause of action nor deprive the defendant of any defense which he had to the original suit, the plaintiff's right shall be preserved." To the same effect are the following cases: *Ohio, etc., R. Co.* v. *Stein* (1894), 140 Ind. 61, 39 N. E. 246; *Thrall* v. *Gosnell* (1902), 28 Ind. App. 174, 177, 62 N. E. 462; *Cleveland, etc., R. Co.* v. *Bergschicker* (1904), 162 Ind. 108, 69 N. E. 1000; *Fort Wayne Iron, etc., Co.* v. *Parsell* (1912), 49 Ind. App. 565, 94 N. E. 770, 775.

It is next insisted that the court erred in overruling the demurrer to this third paragraph of complaint. It is insisted that if there is no new charge of negligence made by the allegations with reference to the defective telephones and telephone lines, then the complaint remains practically the same as the original complaint, and the former decision of this court is the law of the case, and the complaint is therefore bad.

There can be no doubt that the former decision of this case by this court is the law of the case, in so far as it applies to the facts now pleaded or the evidence introduced thereunder, where the question presented remains the same as that decided on the original pleading; but this is not necessarily so, of course, as to new or additional questions presented by this appeal. *City of Logansport* v. *Humphrey* (1886), 106 Ind. 146, 6 N. E. 337; *Keller* v. *Gaskill* (1898), 20 Ind. App. 502, 50 N. E. 363; *Brunson* v. *Henry* (1898), 152 Ind. 310, 52 N. E. 407; *Fort Wayne Iron, etc., Co.* v. *Parsell, supra.*

Appellant makes its mistake in assuming that no amendment has been made other than that relating to rules and telephone conditions.

The grounds on which the original complaint in this case was held bad by this court were, to use the language of the court, as follows: "Under the rules established by these decisions there is no sufficient averment of the duties of the different employes of appellant where the same is necessary to be shown. To aver of an employe that it was his duty, etc., is merely the averment of a conclusion, and is not sufficient, the facts showing the duty should be averred. * * * This paragraph of the complaint is also bad for the reason that it clearly appears that the negligence that caused the injury was the negligence of an employe in the operation of the road while performing the servant's duty, and who was therefore a coservant with appellee. The allegations show that appellee was an em-

ploye in the transportation department of appellant, the same as Mahoney; that Mahoney was running the car that caused the collision; that the collision was not caused by any defect in track, roadbed, equipment or appliances, *but by negligent operation.* This is the employe's duty, and not the master's." (Our italics.) *Indiana Union Traction Co.* v. *Pring* (1908), 41 Ind. App. 247, 249, 83 N. E. 733.

The allegations of this amended complaint we think completely meet the objections made by this court to the original. The allegations of these amended paragraphs, as indicated by the summary of the third, above set out, to which the objections are addressed, are no-longer open to the objection that they show plaintiff's injury was the result of the negligence of a coservant, nor that they allege conclusions as to the duties of the employes, rather than the facts, etc. There was no error in overruling the demurrer to either paragraph of the complaint.

In discussing the assigned error of overruling the motion for a new trial, appellant insists that it was error to admit evidence to the effect that "there was a defect

6. in the telephones and lines, and that they were out of order on that occasion."

For the reasons already indicated in discussing the ruling on the motion to strike out the allegations of the complaint on this same subject, we think there was no error in admitting this evidence. The evidence was proper as tending to throw light on the character of Mahoney's conduct, and for the purpose of determining whether he was negligent

7. in doing what he did. If competent for any purpose, no error could be predicated on the admission of the evidence.

It is next insisted by appellant "that it was error to admit * * * evidence of specific acts of Mahoney in proof of the charge of his incompetency." In this connection

8. it should be remarked that the second paragraph of complaint proceeds on the theory that Mahoney was

incompetent, etc. In support of its contention on this question, authority is cited by appellant to the effect that proof of incompetency can only be made by proof of general reputation. 4 Thompson, Negligence §§4053, 4910; 1 Greenleaf, Evidence (15th ed.) §461.

The authorities cited by appellant support its contention to the extent that proof of specific instances of incompetency, or want of care of an employe, are not admissible for the purpose of proving negligence of such employe at the time complained of, but we find no holding in this State that this proof may not be made to show knowledge at least of the incompetency on the part of the master, but, on the contrary, the holdings in our own State are all to the effect that such proof is competent for that purpose. *Pittsburgh, etc., R. Co.* v. *Ruby* (1871), 38 Ind. 294, 312, 318, 10 Am. Rep. 111; *Broadstreet* v. *Hall* (1907), 168 Ind. 192, 204, 205, 80 N. E. 145, 10 L. R. A. (N. S.) 933, 120 Am. St. 356; *Evansville, etc., R. Co.* v. *Guyton* (1888), 115 Ind. 450, 17 N. E. 101, 7 Am. St. 458; *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 39 Am. Rep. 98.

But counsel insist that the evidence was probably considered by the jury on the main proposition. Conceding this to be true, the error was not in the admission of the evidence, because it is error to exclude evidence if admissible for any purpose. If appellant's counsel be correct in their contention, the error resulted from a failure to restrict and limit the evidence by proper instruction. Appellant failing to tender such instruction cannot be heard to complain of a prejudicial influence resulting from its own neglect and omission. *City of Delphi* v. *Lowery, supra,* 524.

That the verdict of the jury is not sustained by sufficient evidence is next insisted by appellant. Appellant contends that the evidence shows that Mahoney, whose negligence caused said injury, and appellee were at the time performing duties which they respectively owed to the master, and not duties which the master owed to his

servants, and that therefore appellee's injury was the result of the negligence of a coemploye, and there can be no recovery. Appellant bases this contention on the fact that the proof shows that Mahoney when he determined to send out the car which collided with appellee's car, having failed to get the regular motorman to accompany the same, went on the car himself as such motorman, and operated the same as such from the time the car left the barn until the collision occurred which resulted in appellee's injuries, and the further fact that there were positive printed rules of the company to the following effect, viz.: "34. Extra trains are not shown on time table, and they have no rights except those given them by the train dispatcher. * * * 37. Extra trains must not be run without orders from the dispatcher. * * * 51. All interurban trains must report to dispatcher at sidings 30, 49 and 27."

It is true, as contended by appellant, that the grade or rank of an officer or superior servant of a corporation does not necessarily furnish the test by which to determine whether or not he be a coservant of an employe of the same master. If such officer or superior servant of such corporation undertakes to perform for the master the duties

11. and service of the servant, he at the time having authority so to do, while so performing such service his negligence in performing the same is the negligence of a coservant. *Dill* v. *Marmon* (1905), 164 Ind. 507, 521, 73 N. E. 67, 69 L. R. A. 163; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 700, 68 N. E. 262, 63 L. R. A. 460; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280, 286, 66 N. E. 886; *Island Coal Co.* v. *Swaggerty* (1903), 159 Ind. 664, 667, 62 N. E. 1103, 65 N. E. 1026; *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 85, 64 N. E. 605, 59 L. R. A. 792; *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680, 687, 52 N. E. 391, 54 N. E. 383; *American Telephone and Telegraph Co.* v. *Bower* (1898), 20 Ind. App. 32, 35, 49 N. E. 182; *Louisville, etc., R. Co.* v. *Isom* (1894), 10 Ind. App.

691, 694, 38 N. E. 423; *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 125, 22 N. E. 876, 6 L. R. A. 584, 16 Am. St. 372. On this question, however, the general rule recognized by the authorities cited, as well as by the courts of other jurisdictions, seems to be that where the vice-principal acts as such, and not in his capacity as a colaborer, the master is liable for his negligent act. *Consolidated Coal Co.* v. *Wombacher* (1890), 134 Ill. 57, 24 N. E. 627; *Fanter* v. *Clark,* 15 Ill. App. 470; *Chicago Anderson, etc., Brick Co.* v. *Sobkowiak* (1894), 148 Ill. 573, 36 N. E. 572; *West Chicago St. R. Co.* v. *Dwyer* (1896), 162 Ill. 482, 44 N. E. 815; *Pittsburgh Bridge Co.* v. *Walker* (1897), 170 Ill. 550, 48 N. E. 915; *Illinois Steel Co.* v. *Schymanowski* (1896), 162 Ill. 447, 44 N. E. 876; *Offut* v. *World's Columbian Exposition* (1898), 175 Ill. 472, 51 N. E. 651; *Louisville, etc., R. Co.* v. *Heck* (1898), 151 Ind. 292, 50 N. E. 988; *Louisville, etc., R. Co.* v. *Graham* (1890), 124 Ind. 89, 24 N. E. 668; *Evansville, etc., R. Co.* v. *Holcomb* (1894), 9 Ind. App. 198, 36 N. E. 39.

The evidence in this case tends, at least, to sustain the averments of the complaint on the subject of the absence of Charles Baldwin, general superintendent of transportation, on the day that plaintiff was injured, and that in his absence Mahoney had authority, as general trainmaster over appellant's entire system, to send and take cars to any point on its line, and to do all things necessary properly to superintend defendant's business in the operative department, and was authorized to decide when, how and under what conditions a special car should be sent out. There was evidence also tending to prove the other material averments of this third paragraph of complaint with reference to Mahoney taking out the car in question, and ordering and directing its movements. The mere fact that Mahoney went on the car as motorman did not necessarily lose him his identity as such representative of his master. Under the authorities, we think it clear that

the same person may at one and the same time be both master and servant, that in the actual manual operation of the car as motorman Mahoney was performing the service of a servant, but that in authorizing and directing the movements of such car he represented and necessarily performed the service of master. *Cole Bros.* v. *Wood* (1894), 11 Ind. App. 37, 59, 60, 36 N. E. 1074; *Chicago, etc., R. Co.* v. *Strong* (1907), 228 Ill. 281, 81 N. E. 1011.

Some of the general principles which underlie the question here involved as expressed by the courts of this State are as follows: "It is the obligation or duty of the master not to expose his servants while conducting his business to perils or hazards which might have been provided against by the exercise of due care and proper diligence on the part of the master." *Pennsylvania Co.* v. *Mc Caffrey* (1894), 139 Ind. 430, 441, 38 N. E. 67, 29 L. R. A. 104. See, also, *Baltimore, etc., R. Co.* v. *Rowan* (1885), 104 Ind. 88, 94, 3 N. E. 627.

When the employe acts as and for the master, and acts within the scope of his authority, he binds his master the same as if the master had himself acted. *Evansville, etc., R. Co.* v. *McKee* (1885), 99 Ind. 519, 522, 50 Am. Rep. 102; *Terre Haute, etc., R. Co.* v. *McMurray* (1885), 98 Ind. 358, 368, 49 Am. Rep. 752; *Consolidated Coal Co.* v. *Wombacher, supra; Offut* v. *World's Columbian Exposition, supra.*

Whenever a master delegates to a servant the performance of a duty which rests on the master alone, he is liable for the manner in which the duty is performed. *Lindvall* v. *Woods* (1889), 41 Minn. 212, 42 N. W. 1020, 4 L. R. A. 793; *Harrison* v. *Detroit, etc., R. Co.* (1890), 79 Mich. 409, 44 N. W. 1034, 7 L. R. A. 623, 19 Am. St. 180.

"Where a master employs one in a vocation requiring him to act under certain conditions and commits to his discretion the duty of determining when and what action may be necessary, the employer will be responsible for the misjudg-

ment, as well as the misconduct of the servant, and if he acts when there is no occasion for it at all, though intending to accomplish some end of the employment, such responsibility will still exist." *Oakland City, etc., Society* v. *Bingham* (1892), 4 Ind. App. 545, 549, 41 N. E. 383. See, also, *Pittsburgh, etc., R. Co.* v. *Sullivan* (1895), 141 Ind. 83, 88, 40 N. E. 138, 27 L. R. A. 840, 50 Am. St. 313; *Pennsylvania Co.* v. *Weddle* (1885), 100 Ind. 138, 141; *Fogarty* v. *St. Louis Transfer Co.* (1904), 180 Mo. 490, 79 S. W. 664.

As throwing further light on the particular question involved in the application of these general principles to the facts of this case as presented by the evidence, we submit some expressions of the courts of other jurisdictions which influence this opinion. The supreme court of Illinois in the case of *Chicago, etc., R. Co.* v. *McLallen* (1876), 84 Ill. 109, at page 116, said: "As between the conductor and the company, the assistant superintendent, to whose orders the trains are all subject, is the representative of the corporation. His orders to the conductor of a train are, essentially, the orders of the employer. This rule applies as well to all orders issued by his assistants in his office, and issued in his name. * * * If those intrusted by him with the management of the business of the corporation, by orders issued in his name, neglect to issue a necessary order, that is his neglect, and the negligence of the corporation."

In the case of *Dayharsh* v. *Hannibal, etc., R. Co.* (1890), 103 Mo. 570, 576, 15 S. W. 554, 23 Am. St. 900, the supreme court of that state said: "He [the night hostler or boss] was obviously intrusted at the time with the master's power of control of the practical business done at the roundhouse, of directing the movement of the engines, and of the plaintiff and of the other employes there. * * * It was undoubtedly within the scope of Mr. Stephens' authority, as 'night hostler' or 'boss' to direct where the engine and tender, that struck plaintiff, should be placed, and how and when they should be moved over the tracks. In giving

directions to that end and seeing to their execution, we think he was performing the master's part, and as such was· the representative of the latter and not a mere fellow servant of the plaintiff.   If he had expressly directed the engine to be moved down by another upon the plaintiff, in the manner described in the evidence for the latter, the defendant would have been responsible for the act, and we are unable to perceive any logical or reasonable distinction between so directing it and his performing such negligent act himself, in the circumstances here shown.   It was one which fell within his authority as the master's representative to direct, and it can make no difference in principle whether he did it personally or by another, in its bearing on the rights of the parties to this cause, where his act involved an obvious breach of the master's duty to use care to provide a reasonably safe place for plaintiff to work (as already defined). The performance of that duty was intrusted to the 'hostler' and his negligence in not performing it is ascribable to the master.''

That court again said, in the case of *Miller* v. *Missouri Pac. R. Co.* (1891), 109 Mo. 350, 356, 19 S. W. 58, 32 Am. St. 673:   ''There is no doubt but a foreman or other representative of the master may occupy a dual position; that is to say, he may at the same time be a fellow-servant and an agent or representative of the master.   There are certain duties which are personal to the master, and for the nonperformance of which he is liable to his servants.   These duties may be delegated to a foreman or even to a servant, and the master is still liable for their non-performance.''

In *Slater* v. *Jewett* (1881), 85 N. Y. 61, 39 Am. Rep. 627, the late Chief Justice Folger thus clearly stated the duties of railways in this particular:   ''It is urged, and with reason, that clearly arranging and promulgating the general time-table of a great railway is the duty and the act of the master of it; that when there is a variation from the general time-table for a special occasion and purpose, it is as much

the duty and act of the master, and he is as much required to perform it; that it is the duty and act of the master to see and know that his general time-table is brought to the knowledge of his servants who are to square their actions to it; that the same is his duty and act as to a variation from it, which is but a special time-table; and that, therefore, whomever he uses to bring those time-tables to the notice of his servants, he puts that person in his place to do an act in his stead, inasmuch as the responsibility is upon him to see and know that it is done and done effectually; and that if, instead of doing it in person, he chooses to do it through an agent, that agent, *pro hac vice,* is he, the master, and he, the master, is responsible for a negligent act therein of that agent whereby a fellow-servant of him is harmed.''

See, also, *Lewis* v. *Seifert* (1887), 116 Pa. St. 628, 648, 11 Atl. 514, 2 Am. St. 631.

The Supreme Court of our own State, in the case of *Cincinnati, etc., R. Co.* v. *Lang* (1889), 118 Ind. 579, 581, 21 N. E. 317, said: ''It may be true that the intestate was bound to know of the danger from regular trains, running according to time-tables or rules, and yet not be true that he was bound to know that a wild or irregular train would be run over the road, and so run as to bring about a collision. The peril from the wild train he was not bound to anticipate, for the reason that, from the assurance impliedly contained in the special order assigning a designated duty to him, he had a right to assume, in the absence of countervailing facts, that, if he himself exercised care and diligence, the company would not send out a wild train without exercising ordinary care and diligence to prevent injury to him while traveling in the usual way to the place where he was called by the duty assigned him, and while performing that duty at the place designated.  *  *  *  The peril he was subjected to from the irregular train cannot be regarded as one of the ordinary risks incident to the service he had entered.''

We think that these holdings of the courts of our own State and of other jurisdictions warrant the statement that the rule governing cases of this character is as follows: "An employe of a master may at one and the same time occupy a dual position, or sustain a dual relation to his master, that is to say he may at the same time be a fellow-servant and an agent or representative of the master," and that when so situated, if such employe, as the agent and representative of his master, negligently does that which it is the master's duty to do, and which such employe under his employment as such agent or representative of his master is authorized to do, or negligently omits to do that which as such agent and representative of his master he is under obligation to do, and such negligent act of commission or omission results in injury to another servant of such common master, such master must respond in damages to such injured servant who has himself in no wise contributed to such injury.

The error of appellant's contention lies in the fact that it ignores this dual relation which Mahoney sustained to his master. Mahoney as motorman is one person, and as such is clothed with certain duties and obligations to his master in the operation of the car, and Mahoney as master or vice-principal of his master is quite another person, with entirely different powers, duties and obligations under his employment and under the law. He, the same as the owner and general superintendent, may combine in himself both positions, and whether he acts as the one or the other depends on the service rendered, but this service is not necessarily *the actual,* the manual or physical service. As motorman he must obey orders, as master he requires none, but may, in fact must, make and give them. As motorman alone, Mahoney when he left siding No. 30 without advising the train dispatcher disobeyed the orders of his master; as master he simply ignored a former order, and substituted therefor another, his own judgment and discretion, and such act

under the law, being that of the master itself, it cannot escape the responsibility therefor. As master he could sit in his office and direct the taking out of any car, and control its movement along the entire line. The fact that he accompanies the car in person as motorman does not prevent him from exercising the same control.

Whether the service performed, which resulted in the injury, was in fact the service of a master or a coservant is not to be determined solely by the manual or physical service being rendered, but there may be a mental service also to be taken into account, one requiring the exercise of judgment, discretion, control or supervision. In this case there was the service of judgment, discretion and control in the sending out and operation (by operation we mean control of movement and not the manual or physical operation) of the car in question, which was the performance of the master's duty, and there was also the manual or physical operation of the car as motorman, and this was the duty of the servant.

In the sending out of the car in the first instance there could be no question but that Mahoney acted as master, and we think, for the same reasons, there can be no question but that he acted in such capacity at every stage of the movement of the car, where his judgment and discretion were exercised in causing the car to be moved either by his order and direction or by going on the car and moving it in person.

But even if it be conceded that, under the proof, Mahoney in leaving siding No. 30 acted as a coservant with plaintiff, the evidence is still sufficient, because there is evidence tending to prove the other allegations of the complaint, which charge that Mahoney negligently took the car out in the first instance, and that this negligence was one of the proximate causes of the injury as charged. This being true, and being the act of the master,

the mere fact that another negligent act, which, under the proof, may have been that of a coservant, contributed to plaintiff's injury, would not defeat his right to recover, because it is well settled that "where the master's negligent act is a proximate cause of the injury he is responsible, the injured party being himself without fault, although the negligence of a fellow-servant may have concurred in bringing an injury upon the plaintiff." In this connection the language of Judge Elliott, in the case of *Cincinnati, etc., R. Co.* v. *Lang, supra*, at page 583, is applicable: "If the master's negligence is the principal cause of the injury, then he will not be absolved from liability, although the negligence of a fellow-servant may have concurred in causing the injury; so that, if it were true that the negligence that caused the collision was in part that of the persons in charge of the wild train, even then the appellant, under the case made by the complaint, would be liable. This conclusion is well fortified by authority." See, also, *Pennsylvania Co.* v. *McCaffrey, supra; Louisville, etc., R. Co.* v. *Berkey* (1894), 136 Ind. 181, 189, 35 N. E. 3; *Pennsylvania Co.* v. *Burgett* (1893), 7 Ind. App. 338, 341, 33 N. E. 914, 34 N. E. 650; *Lake Shore, etc., R. Co.* v. *Wilson* (1894), 11 Ind. App. 488, 491, 38 N. E. 343; *Cayzer* v. *Taylor* (1857), 10 Gray 274, 69 Am. Dec. 317; *Booth* v. *Boston, etc., R. Co.* (1878), 73 N. Y. 38, 29 Am. Rep. 97.

Appellant next complains of certain instructions. Number three, given by the court, is the first objected to. It is as follows: "If you believe from the evidence that the defendant was guilty of the negligence charged in the amended complaint, or in any one of the paragraphs thereof, and that the injuries complained of were the natural consequence of such negligence, and such as might have been foreseen and reasonably anticipated as the result of such negligence, then such negligence should be regarded as the proximate cause of the injury." It is in-

sisted that this instruction is erroneous, because ''it omits the factor of probability, which is essential in determining proximate cause.'' It is true the word ''probable'' does not accompany the word ''natural'' as frequently occurs, but we think the factor of probability of the consequence of the negligence is sufficiently embodied in the word ''natural'' itself, and the further qualifying words, ''and such as might have been foreseen and reasonably anticipated as the result of such negligence.'' Evidently no harm could have resulted to appellant from the omission of the word ''probable,'' in view of the other words contained in the instruction.

Instruction eight is next objected to. This instruction places on appellant the burden of proving that appellee knew of the incompetency of Mahoney. This burden was on appellee, and the giving of the instruction was error. *Ohio, etc., R. Co.* v. *Dunn* (1894), 138 Ind. 18, 21, 36 N. E. 702, 37 N. E. 546; *Evansville, etc., R. Co.* v. *Duel* (1893), 134 Ind. 156, 33 N. E. 355; *Louisville, etc., R. Co.* v. *Sandford* (1889), 117 Ind. 265, 19 N. E. 770; *Indianapolis, etc., Transit Co.* v. *Andis* (1904), 33 Ind. App. 625, 72 N. E. 145; 1 Rice, Evidence §75.

In this case, however, we are unable to see where any harm could have resulted to appellant, or how the verdict was in any manner influenced by the instruction. There was entirely sufficient affirmative proof to justify the jury in finding that appellee had no knowledge of the incompetency charged, and shown by the proof, and there was no proof whatever offered by either appellee or appellant to the contrary. Under such circumstances, the appellee on this question had made a *prima facie* case, which was not disputed by any other evidence offered, and it was not important on whom the burden of proof rested, and any instruction on the subject of the burden of proof as to such fact was necessarily harmless.

Instruction twenty-six, given by the court on its own

motion, is next objected to, for the reason that it told the jury that the ordering of the starting of the trains and cars was the duty of the master. This instruction is as follows: "The court instructs you that in the operation of an electric street railway, by a railway corporation, the ordering of the starting of its trains or cars is an absolute duty of such corporation, that is the master, and when such company entrusts that duty to one of its officers or employes then such officer or employe, in discharging that duty is a vice-principal, and the act of such person in that respect is the act of the company, the master, and for his negligent acts in discharge of these particular duties the master is liable to any one, employe, or otherwise, who being himself free from fault, is injured thereby. You are further instructed that the running and operating its cars is not a duty of the master to the servant, and this not being the duty of the master, to the servant, whether it be motorman, conductor, or trainmaster, the operator upon its car is a fellow servant, and such master is not liable for injury to its employes who are his fellow servants for the negligent acts of such operator, where the master has used care and diligence in selecting competent servants; and these facts should be kept in your mind because it becomes important in determining your finding upon the issues made by the first and third paragraph of the complaint."

Instructions thirty, thirty-one and thirty-two are objected to for practically the same reason as that urged against twenty-six. What we have before said in this opinion, together with the authorities cited, furnishes our reason for thinking these instructions correct expressions of the law governing the case.

We have examined the instructions in the case with care, and all save number eight, from which no possible harm

could have resulted, state the law of the case as favorable to appellant as the authorities would permit.

We find no error in the record harmful to appellant.

Judgment affirmed.

NOTE.—Reported in 96 N. E. 180. See, also, under (1) 25 Cyc. 1308; (2) 25 Cyc. 1305; (3) 31 Cyc. 417; (4) 3 Cyc. 399; (5) 26 Cyc. 1394; (6) 26 Cyc. 1422; (7) 38 Cyc. 1340; (8) 26 Cyc. 1435; (9) 38 Cyc. 1340; (10) 26 Cyc. 1454; (11) 26 Cyc. 1316; (12) 26 Cyc. 1076; (13) 26 Cyc. 1318; (14) 26 Cyc. 1316, 1321; (15) 26 Cyc. 1302; (16) 26 Cyc. 1496; (17) 26 Cyc. 1495; (18) 38 Cyc. 1809; (19) 26 Cyc. 1502. As to the non-allowance of an amendment that would debar the statute of limitations as a plea, see 51 Am. St. 430. As to who is a vice-principal and who a fellow-servant, see 75 Am. St. 584.