## VINCENNES PACKING CORPORATION *v.* TROSPER

[No. 16,150.   Filed November 28, 1939.   Rehearing denied
March 27, 1940.   Transfer denied May 6, 1940.]

*Padgett & Rogers,* of Washington; and *Floyd L. Young,* of Vincennes, for appellant.

*Shake & Kimmell,* of Vincennes; and *Charles H. Bedwell,* of Sullivan, for appellee.

CURTIS, J.—The appellee herein says in his brief that he has no omissions or inaccuracies to point out in the appellant's statement of the record in its brief. We, therefore, state that part of the proceedings necessary to an understanding of the questions presented, substantially as so stated by the appellant, as follows: This was an action by the appellee, John R. Trosper, against the appellant, Vincennes Packing Corporation, to recover damages for alleged personal injuries sustained by the appellee in a collision of a motorcycle on which he was riding, with a wagon, driven by one Ellis Dyer. The action arises from alleged negligence of the said Ellis Dyer, and the liability of the appellant is claimed on the alleged ground that the said Ellis Dyer at the time of the said collision on October 5, 1934, was engaged in the service of the appellant, and was acting

in the discharge of his duties as an employee of appellant under the terms and conditions of his employment with the appellant. The trial was upon the appellee's second amended complaint to which an answer in general denial was filed, and resulted in a verdict of $5,000.00 for the appellee upon which judgment was rendered. This appeal followed. The sole error assigned is that the trial court erred in overruling the appellant's motion for a new trial. Pleadings other than those above indicated were filed and ruled upon but since no questions are presented as to them they will not be further noticed in this opinion.

We quote some of the salient parts of the said second amended complaint as follows: "That said defendant corporation is engaged in the business of packing and canning tomatoes and other products, and as such owned, operated and controlled a certain packing plant in the town of Plainville in Daviess County, State of Indiana, on the 5th day of October, 1934, and for a long time prior thereto.

"Plaintiff further avers that on the 5th day of October, 1934, said defendant had in its employ one Ellis Dyer, whose duties it was, under the terms of his employment, to haul away and dispose of waste products from the defendant's said plant by means of a team and wagon furnished him by the defendant for that purpose; and that on said day said Dyer was acting in the course and scope of his said employment and was engaged in the act of hauling and disposing of said waste products for said defendant as its agent and servant.

"Plaintiff further says that on the evening of said 5th day of October, 1934, at about the hour of 6:15 o'clock of said day, the said Dyer was engaged in hauling a load of said waste material from the defendant's said plant on Indiana State Highway No. 57, proxi-

mately one mile south of the village of Plainville in said county and state, and was proceeding with said team and wagon in a southerly direction on said public highway; that at the time this plaintiff was riding upon a certain motorcycle driven and operated by one Richard G. Trosper, and was proceeding from said village of Plainville in a southerly direction on said State Highway 57, following the said Dyer and said wagon.

"That the condition of the weather on said day was cloudy and murky and that by reason thereof and of the time of day it had become and was dark at said hour of 6:15 o'clock, as aforesaid, to such an extent that a person operating or riding upon a motorcycle on said highway could not see or observe the presence of a team or wagon thereon, unless said wagon had displayed thereon some appropriate light or reflector to disclose the presence of the same. That at said time and place the said defendant was negligent and careless in this, to-wit: That said defendant negligently and carelessly failed and omitted to have or cause the said wagon used in its said service to be equipped with any red light or red reflector so adjusted and displayed as to be clearly visible for a distance of at least five hundred (500) feet from the rear, and negligently and carelessly failed to have said wagon equipped with any red light or reflector which was then and there lighted and that said hour of 6:15 o'clock, aforesaid, was on said day more than one-half hour after sundown and one-half hour before sunrise.

"Plaintiff further avers that as a direct and proximate result of the acts and omissions of negligence on the part of said defendant as hereinbefore set out the said Richard Trosper, who was then and there driving and operating said motorcycle ran the same into and against the said wagon and operated by the said Dyer

and used in the service of said defendant, as aforesaid, with great force and violence, by reason of which said motorcycle and said wagon came into collision and this plaintiff was violently thrown from said motorcycle to the pavement of said highway.

"Plaintiff says that on said 5th day of October, 1934, at about the hour of 6:15 o'clock P. M., of said day when plaintiff received the injuries herein complained of, the said Ellis Dyer was engaged in the service of said defendant and was acting in the discharge of his duties as the employee of said defendant under the terms and condition of his said employment. . . .

"Plaintiff further avers that at the time of receiving said injuries he was in the exercise of due care and diligence for his own safety and that his said resulting injuries were directly and proximately caused by the acts and omissions of negligence herein charged against the said defendant, separately and severally."

The causes or grounds of the motion for a new trial that are presented for review may be stated generally to be that the verdict of the jury is not sustained by sufficient evidence; is contrary to law; error as to certain rulings on the evidence and error as to each of certain instructions.

At the outset, the appellee contends that the appellant's brief presents no questions in that it is claimed to be lacking in the conciseness required by Rule 18 of this court. We believe, however, that to say the least, there has been a good-faith effort to comply substantially with the rules and that this court can fully understand from the briefs what the appellant's contentions are. We now, therefore, proceed to the merits of the case.

First upon the rulings as to the evidence. The several objections went mainly to two classes of evidence,

to-wit: Evidence as to the previous hauling of slop to places other than to the Nathan E. Killion farm and, secondly, as to the wagon in question not having been lighted on previous nights when it was in use upon the road in hauling slop. Some of the questions were preliminary in form and nature and were not such as would in any manner be harmful. The rulings as to such preliminary questions present no difficulty. They were not harmful. In view of the fact that one of the primary questions in the trial was as to the scope of the employment of Ellis Dyer in his hauling of slop from the appellant's plant we do not view the evidence as to the hauling of slop at previous times to the other places mentioned in the evidence as improper. The rulings in that regard were not erroneous. In passing it may be mentioned also that some such evidence went in without objection.

The evidence that the wagon in use at night was not equipped with any lights or reflectors on previous occasions when in use in hauling slop would not of itself establish the alleged negligence of the appellant in not having the wagon in question so equipped on the night of the accident, but in our opinion no reversible error was committed in the ruling admitting it. It would tend to show knowledge on the part of the appellant in such matter. See: *Indiana Union Traction Co.* v. *Pring* (1912), 50 Ind. App. 566, 96 N. E. 180; *Irvine* v. *Baxter Stove Co.* (1919), 70 Ind. App. 105, 123 N. E. 185; *W. A. Flint Co.* v. *John V. Farwell Co.* (1922), 192 Ind. 439, 134 N. E. 664. Had the appellant desired that such evidence be limited in its scope a proper instruction could have been tendered so limiting it. This was not done. See: *Irvine* v. *Baxter Stove Co., supra; Indiana Union Traction Co. v. Pring, supra; Chesapeake, etc., R. Co.* v. *Perry* (1919), 71 Ind.

App. 506, 125 N. E. 414. In addition it should also be observed that the objections offered were very general in nature and not well calculated to present any questions for review, but we have not rested the opinion on this latter observation. See: *Ward Bros. Co., Inc.* v. *Zimmerman, Admx.* (1932), 94 Ind. App. 130, 180 N. E. 25; *Ohio & Mississippi Railway Co.* v. *Walkey* (1887), 113 Ind. 196; *Chesapeake, etc., R. Co.* v. *Perry* (1919), 71 Ind. App. 506, 125 N. E. 414.

We have examined with care the instructions given and it is our opinion that they correctly and fully state the law applicable to the evidence under the issues. The three instructions complained of by the appellant when considered in connection with all of the other instructions given in the case, as they must be, did not in our opinion in any way mislead or misinform the jury. We set out said three instructions as follows:

"Instruction No. 6

"It is the law of this state that where a servant is engaged in accomplishing an end which is within the scope of his employment, and where so engaged adopts means reasonably intended and directed to that end, which result in injury to another by reason of the negligence of said servant, the master is responsible for the consequences thereof, regardless of the motives that induced the adoption of the means; and this, too, even though the means, so adopted, were outside of his authority and against the express orders of the master.

"So, in this case, if the jury finds from a preponderance of all the evidence in the cause, that Ellis Dyer was on the 5th day of October, 1935, the servant of the defendant Vincennes Packing Corporation; that in hauling waste products from the plant of the defendant to his farm said Dyer was engaged in accomplishing an end which was within the scope of his employment, and that the means adopted by the said Dyer for that purpose were

reasonably intended.and directed to that end, then the jury would be warranted in finding that at the time of the accident complained of said Ellis Dyer was the servant of the defendant Vincennes Packing Corporation and, as such, was acting within the scope of his employment."

"Instruction No. 7

"An act may be within the scope of the servant's employment, even though in performing it the servant may be accomplishing something for his own benefit as well as for the benefit of his master.

"Likewise, a servant may be acting in the scope of his employment, although the act done is at a time or place that is different from the usual time or place where acts within the scope of his employment are ordinarily performed.

"The test as to whether a particular act is within the scope of a servant's employment is this: Was the end which the servant was engaged in accomplishing within the scope of his employment, and were the means adopted by him reasonably intended and directed to that end? If so, the servant may be said to be acting within the scope of his employment."

"Instruction No. 8

"Whether or not Ellis Dyer was acting as the servant of the defendant Vincennes Packing Corporation, and whether he was acting within the scope of his employment, as such, at the time of the accident complained of, and which resulted in plaintiff's alleged injuries, is for the jury to determine from a preponderance of all the evidence and from the law, as given to you in these instructions."

The most serious questions are presented under the causes in the motion for a new trial, that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. The appellee admits that if Ellis Dyer was engaged solely for his own benefit and not for the benefit of the master at the time of the accident, the appellant is not liable. It is the appellant's contention that the evidence conclusively and

without dispute shows just that to be the fact. The jury by its verdict, however, necessarily decided otherwise and the rule is a familiar one that if the verdict is sustained by any competent evidence or by legitimate inferences to be drawn from such evidence, then this court will not disturb it.

In passing upon the question as to whether or not the verdict is sustained by sufficient evidence, it is the duty of this court, as a reviewing court, to consider the evidence most favorable to the verdict. We mention some of it: There was a regular day and also a regular night hauler of slop. Upon the date of the accident and for some time prior thereto the said Dyer was the night hauler. He worked from 6:30 or 7:00 P. M. to 7:00 A. M. in the morning. One Nowling was the day hauler and he worked the other 12 hours of the day. There was evidence that the slop had no value to the appellant; that it was given away and in most cases hauled by it in its own wagons drawn by horses provided by the appellant; that most of the slop was hauled to the Killion farm owned by the father of the president of the appellant corporation; that some of it was hauled to other farms sometimes without even the knowledge of the owner of said other farms; that upon a previous occasion a load of tainted pumpkins was taken by Dyer to his own farm; that Dyer himself testified that he thought that no objection would be made to his taking the load of slop in question to his own farm; that on the night in question Dyer came to the appellant's plant about an hour before his regular checking in time and soon thereafter hitched one of the appellant's teams to the loaded slop wagon in question and proceeded to haul it away, as heretofore stated, to his own farm. There is no evidence that Dyer was acting surreptitiously. What he did was apparently done

openly in the presence of others and at the usual place where he worked. Section 35-1002, Burns' 1933, § 8505, Baldwin's 1934, requires a plant such as the appellant's plant where "food is manufactured, packed, stored, sold or distributed" to keep its plant clean and remove daily its "waste products which were subject to decomposition or fermentation."

The appellant recognized that the wagon in question, if used at night, must be equipped in accordance with the statute. In its own instruction number 4 and given by the court, the jury was informed that every vehicle operated on any public highway in this state "shall have attached from the rear thereof at least one (1) red light or at least one (1) red reflector. Such light shall be so adjusted and displayed as to be clearly visible for a distance of five hundred (500) feet from the rear and shall be lighted from one-half hour after sundown until one-half hour before sunrise." There was evidence that the wagon in question was not so lighted and equipped and that the accident occurred at a time when the statute required it to be so lighted and equipped. There was thus ample evidence of the said charge of negligence, but the question is whether or not the verdict of the jury requiring the appellant to respond in damages should be upheld under the facts shown by the evidence.

We believe that the jury was warranted in reaching the conclusion, which it evidently did reach, that Dyer at the time of the accident was acting within the scope of his employment and that the appellant should be held liable in damages for the injury flowing from the negligence charged in the second amended complaint. We think that the jury could properly conclude that Dyer was rendering services of benefit to his master, the appellant, at the time of the accident and even though he

may have been at the same time also serving his own interests, the master is liable. In *Pittsburgh, etc., R. Co.* v. *Kirk* (1885), 102 Ind. 399, 1 N. E. 849, the Supreme Court of this state said:

"In this case it cannot be said that the servant had stepped aside from the master's service for a purpose of his own. The most that can be said of it is that in accomplishing an end within the scope of his employment he adopted a method wholly unauthorized, which was possibly resorted to to accommodate himself and those under him; but whatever the motive may have been, since the end aimed at was, as averred in the complaint, and as the judgment here found, within the line of service, it cannot be said, upon the evidence, that he was acting without authority in a matter not connected with his employment."

■ In section 236 of the Restatement of the Law of Agency it is aptly stated:

"An act may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person.

"The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service, as where the servant drives rapidly, partly to deliver his master's goods, but chiefly in order that he may terminate his day's work or to return the vehicle to the master's premises. So also, the act may be found to be in the service where not only the manner of acting but the act itself is done largely for the servant's purposes."

On the day of the accident, Dyer commenced work from a half hour to an hour before his regular hours

and hauled the load in question to his own farm. The accident occurred during such time. The appellant, therefore, contends that this court should say as a matter of law that at the time of the accident Dyer was not in the service of the employer and within the scope of his employment. We believe, however, that it is the general rule in such cases, supported by the weight of authority, that a servant may under proper evidence be held to be within the scope of his employment where the period within which he acts is not unreasonably disconnected from the authorized period. The fact that the act done was openly done upon the employer's premises or that the instrumentality is the employer's or that the act done was within the usual duties of the servant is of importance in determining the fact as to whether or not the act is within the scope of the employment. So, in the instant case the jury having considered all of such facts as shown by the evidence and having concluded, as it evidently did conclude, that the act done by Dyer was within the scope of his employment, we cannot say as a matter of law that the conclusion reached by the jury should be disturbed. We do not believe that the evidence before us conclusively shows that Dyer stepped aside from the master's business and did an act not connected therewith to the damage of the appellee. The same thing may be said also of the appellant's contention that the evidence showed that Dyer was under an instruction to haul the slop to the Killion farm. But that fact, if it be a fact, was not of itself sufficient alone to take the said hauling act out of the scope of the employment. That fact, if it be a fact, was entitled to be considered by the jury in its determination of the ultimate fact as to whether or not the act done was within the scope of the employment by the appellant. For additional authorities tending to sus-

tain the above propositions of law laid down, see: Restatement of the Law of Agency, §§ 229, 230, 233, 234 and 236; *Spice* v. *Astry Admx.* (1915), 184 Ind. 1, 110 N. E. 201; *Rexroth* v. *Holloway* (1909), 45 Ind. App. 36, 90 N. E. 87, and cases cited therein.

For the reasons stated, the judgment is affirmed.

NOTE.—Reported in 23 N. E. (2d) 624.